(No. 88210

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. MARTIN M. WOOLLEY, Appellant.

*Opinion filed February 22, 2002.*

HARRISON, C.J., and KILBRIDE, J., concurring in part and
dissenting in part.

Charles M. Schiedel, Deputy Defender, and Kim Robert Fawcett, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Ted R. Hamer, State's Attorney, of Cambridge (Joel D. Bertocchi, Solicitor General, and William L. Browers and Margaret M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FITZGERALD delivered the opinion of the court:

Defendant, Martin M. Woolley, was convicted in Henry County of six counts of murder (720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1994)), one count of armed violence (720 ILCS 5/33A—2 (West 1994)), one count of armed robbery (720 ILCS 5/18—2(a) (West 1994)), one count of robbery (720 ILCS 5/18—1(a) (West 1994)), and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1994)). Defendant was sentenced to death. On his direct appeal, this court vacated defendant's conviction for armed violence and vacated defendant's death sentence. *People v. Woolley*, 178 Ill. 2d 175 (1997). The cause was remanded to the circuit court for a new capital sentencing hearing. *Woolley*, 178 Ill. 2d at 215. On remand, defendant was again sentenced to death and appealed directly to this court.

Defendant raises 13 issues on appeal. Because we agree with defendant that the trial court erred in informing a panel of prospective jurors that defendant had previously been sentenced to death in this case and in denying defendant's motion for a mistrial, we need not address defendant's remaining issues. We vacate defen-

dant's death sentence and remand this cause for a new sentencing hearing.

## BACKGROUND

Defendant was charged with the shooting deaths of Rane Baldwin and Diana Turley. The evidence presented at defendant's trial is fully set forth in our first opinion in this case. See *Woolley*, 178 Ill. 2d 175. We will discuss only those facts necessary to the disposition of this appeal.

On direct appeal to this court, we affirmed defendant's convictions for murder, armed robbery, and unlawful possession of a weapon by a felon, but vacated defendant's death sentence and remanded for a new capital sentencing hearing. On remand, the trial court conducted a second sentencing hearing. The first panel of jurors was brought into the courtroom to hear introductory remarks by the trial court. During introductory remarks, the trial court informed the prospective jurors that defendant previously had been convicted by a jury of the murder charges. The trial court further told the panel:

> "[A]s the trial was pending, the State gave notice to the defense that they would be seeking the death penalty from the jury should the jury return any verdicts of guilty on one or more of these first-degree murder counts. The jury came back with a return of, of the death penalty on these counts."

Further, the trial court informed these jurors that the murder convictions were appealed to the Illinois Supreme Court and that the court affirmed the first degree murder convictions, but vacated the jury's imposition of death. The trial court stated:

> "They vacated the jury's imposition of the death penalty and gave reasons that they concluded as to why the death penalty should be vacated. They remanded the case back to Henry County for a new trial on the sentencing aspect of the case. The Supreme Court affirmed the convictions of

first degree murder, [and] reversed the death penalty with instructions for it to remand it back to this court for *** a new penalty phase. *** [T]he errors that the Supreme Court ascribed to [*sic*] reversal of the death penalty [*sic*] will not be repeated before this jury."

The trial court admonished the jurors not to consider the result from the first jury with the following statement:

"I admonish you at this time that you are to disregard the result that was rendered by the first jury. You may, after your consideration of this case, return the same verdict. You may return a different verdict. That is entirely up to you. All I'm saying is do not be influenced by the mere conclusion of the first jury. You decide the case on the merits of the evidence that you hear in this court room. The result, of course, will be up to you as a group of twelve jurors. This jury was held in this county and I don't know to what extent some of you present have recollections of that trial here first hand or from reading newspapers or hearing media accounts."

Defense counsel did not object during the trial court's introductory remarks. However, the next day, defense counsel moved for a mistrial and stated:

"[Y]esterday when the court spoke to the jury pool as a group, which I do not object to, and did not object to, I think there may have inadvertently been a statement made to the jury pool that may be in error. I think that the court in the explanation of what led us to this stage of the proceeding mentioned to the jury pool that the original jury had sentenced Mr. Woolley to death and the Illinois Supreme Court vacated the death."

Defense counsel based his argument on two cases, *People v. Hope*, 116 Ill. 2d 265 (1986), and *People v. Davis*, 97 Ill. 2d 1 (1983), in which this court held that the jury should not have any knowledge of what a prior jury had done in a particular case because such knowledge could influence the jury. The trial court denied the motion for a mistrial, stating that a double homicide in such a small county, such as Henry County, would be remembered and

that it would be more intellectually honest to tell the jurors the case history. The trial court concluded,

"I think the distinction between our case and *Hope* and *Davis* are obvious. I recognize the procedural safeguards in *Hope* and *Davis*, but they don't exist here. There is no way in our situation the juror is not going to figure this out, and I think the procedural high road here is disclose and admonish and follow up with a written instruction."

The trial court, pursuant to defense counsel's request, issued an additional cautionary instruction at the conclusion of the sentencing hearing.

On March 23, 1999, jury selection continued and a second panel of jurors was brought to the courtroom and issued introductory remarks by the trial judge. The trial court advised the second panel that defendant had been found guilty and eligible to receive the death penalty. However, the trial court changed its remarks concerning the prior sentencing history:

"You are specifically admonished not to concern yourself with the prior activity of the jury that held the original sentencing hearing. We are not to speculate in our thought processes because that has been vacated. This is a brand new proceeding and the jurors who ultimately will be a part of this proceeding are required to listen to all of the evidence and make their own independent assessment and conclusion of this case as to whether or not the death penalty should be imposed without any speculation or referral at all to the earlier procedures of the jury of ninety five or ninety six."

At the conclusion of the jury selection, 10 jurors were selected from the first panel and 2 jurors and 6 alternates where selected from the second panel to participate in the case.

The trial court gave the following cautionary instruction at the conclusion of the sentencing hearing:

"You may not consider for any reason the verdict of the jury at the Defendant's first sentencing hearing. The original jury sentence verdict is null and void and should not be considered by you for any reason during this sentencing hearing."

Following deliberations, the jury returned a sentence of death and defendant directly appealed to this court.

## ANALYSIS

Defendant maintains that the trial court erred in informing the first panel of jurors that he had been sentenced to death at a previous sentencing hearing. The State counters that no error occurred because the court's remarks were merely a recitation of the history of the case. We disagree with the State.

At the outset, we address the State's argument that defendant has waived the issue by failing to contemporaneously object. Defendant argues that pursuant to *People v. Sprinkle*, 27 Ill. 2d 398 (1963), and *People v. Sims*, 192 Ill. 2d 592 (2000), he was not required to make a contemporaneous objection.

In *Sprinkle*, we noted that where the alleged error is an act of the trial judge, the making of a contemporaneous objection to questions or comments by the judge poses a practical problem for the trial lawyer. *Sprinkle*, 27 Ill. 2d at 400. In *Sprinkle*, the trial judge, during the trial, asked questions and made comments to the State's witness and to the defendant's father. Defense counsel did not object to the judge's comments during either the trial or in a post-trial motion. This court stated that "a fair trial, in all its stages, is a fundamental requirement in a criminal prosecution and when such requirement is not met, it amounts to a denial of due process of law." *Sprinkle*, 27 Ill. 2d at 400. Therefore, we concluded "less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge than is otherwise required." *Sprinkle*, 27 Ill. 2d at 401.

Likewise, in *Sims*, during the aggravation-mitigation stage of the sentencing hearing, the trial judge made a comment to the grandmother of the victim that he was

sorry for her loss. Defense counsel did not object. Citing to *Spritz*, we concluded that the waiver rule is not rigidly applied where the basis for the objection is the conduct of the trial judge. *Sims*, 192 Ill. 2d at 636, citing *People v. Nevitt*, 135 Ill. 2d 423, 455 (1990), citing *Sprinkle*, 27 Ill. 2d at 400-01; *People v. Smith*, 176 Ill. 2d 217 (1997); *People v. Davis*, 185 Ill. 2d 317, 343 (1998); *People v. Dameron*, 196 Ill. 2d 156 (2001). Based upon *Spritz* and its progeny, we will not rigidly apply the waiver rule.

We now turn to defendant's claim that the trial court erred in refusing to proceed with a venire that was untainted by actual and specific knowledge of defendant's prior death penalty sentence and that the trial court should have granted defendant's mistrial motion. We review these claims under an abuse of discretion standard. *People v. Seuffer*, 144 Ill. 2d 482, 500 (1991); *People v. Hryciuk*, 5 Ill. 2d 176, 182 (1954).

The day after the trial court informed the jury of defendant's previous death sentence, defense counsel moved for a mistrial. The trial court denied the motion, maintaining that, unlike a large metropolitan area, a double homicide in Henry County would be remembered and that probably every panel member was aware of the prior death sentence. The trial court concluded that the precedent set out in *People v. Hope*, 116 Ill. 2d 265 (1986), and *People v. Davis*, 97 Ill. 2d 1 (1983), addressed a factually different scenario from the one in this case. The trial judge stated,

> "They didn't intellectually address what I have addressed. [H]ow do you remand a double murder to the local area of the state and expect under any circumstances to get a complete jury where nobody has ever heard of this at all? What are we supposed to do? *** It's an impossibility to expect that somebody on that jury isn't going to ultimately know there was a prior death sentence. I believe that it's the procedurally intellectual high road to disclose and admonish rather than naively expect that nobody on

this Henry County jury has ever heard of this. *** [T]he extension from *Hope* and *Davis* to the facts of our case, I believe is a disservice to the juris prudence [*sic*] of Illinois."

After extensively discussing possible options with both defense counsel and with the State, the trial court denied the motion for a mistrial and gave a cautionary instruction to the jury.

In resolving the issue before us, we turn first to this court's holding in *People v. Davis*, 97 Ill. 2d 1 (1983). In *Davis*, during the eligibility phase of the sentencing hearing, the jury was informed that the defendant had previously received the death penalty for the unrelated murder of another person. In determining whether such information was in error, we noted that at the first stage of the sentencing hearing, a jury determines whether a defendant is *eligible* to receive the death sentence; not whether he *should* receive this penalty. *Davis*, 97 Ill. 2d at 26. We concluded that defendant's death sentence for a prior murder had "absolutely no relevance" at the defendant's eligibility phase of the sentencing hearing. *Davis*, 97 Ill. 2d at 26. We noted that the introduction of such evidence may improperly influence a jury's decision. *Davis*, 97 Ill. 2d at 26. In addition, we found that the jury's sense of responsibility would diminish with its awareness that another panel of jurors already sentenced defendant to death. *Davis*, 97 Ill. 2d at 26. We concluded:

"The possibility that the jury may have found defendant eligible for [the death penalty] on the basis of an irrelevant and prejudicial nonstatutory aggravating factor should not be tolerated." *Davis*, 97 Ill. 2d at 27.

Subsequently, in *People v. Hope*, 116 Ill. 2d 265 (1986), we stated that although the *Davis* court was specifically concerned about the impact of the defendant's previous death sentence on the first stage of the sentencing hearing, a complete reading of *Davis* indicates that such evidence is never admissible. *Hope*, 116 Ill. 2d at 274. In *Hope*, the defendant argued that he was denied a

fair sentencing hearing because two or three jurors had either seen or heard television news reports regarding his conviction and death sentence in a different case. The State argued that evidence of defendant's prior conviction and death sentence was admissible in the second stage of the sentencing hearing where the focus is on the defendant's character and prior record. We stated:

"The possibility that the jury, even one member, may have sentenced the defendant to death on the basis of an irrelevant, highly prejudicial and nonstatutory aggravating factor constitutes reversible error." *Hope*, 116 Ill. 2d at 274.

With these principles in mind, we look at the specific facts in this case. Here, there is no dispute that 10 of the jurors were advised that defendant was previously sentenced to death in the original sentencing hearing. This admonishment was improper under both *Davis* and *Hope* and was not relevant to the jury's deliberations at the second stage of the sentencing hearing. Although a brief history of the case was necessary to explain to the jurors their role at the sentencing hearing, it was not necessary to inform the jurors of defendant's previous death sentence.

Contrary to the State's argument, common sense does not dictate that the jurors would have known that defendant had been sentenced to death at a previous sentencing hearing without the trial judge's comments. The murders occurred nearly five years earlier, and the trial and first sentencing hearing occurred nearly four years earlier. Even though some jurors may have heard or remembered the double homicide, it is not a forgone conclusion that the jurors would have been aware of the sentence imposed. Further, even if the jurors remembered the case and the previous sentence, their decision at the resentencing hearing would not have been aided by additional reference to the fact that a prior jury had sentenced defendant to death. Such information was not

necessary in presenting the case history. We find that informing the panel of jurors of defendant's original sentence was both prejudicial and inflammatory.

Furthermore, as we previously noted in *Davis*, information regarding a previous death sentence may diminish a jury's sense of responsibility. *Davis*, 97 Ill. 2d at 26. The fact that the jurors heard that another jury sentenced defendant to death could have mitigated the serious consequences of their decision. The State, following the reasoning of the trial court, maintains that this was not the case because defendant was not under sentence of death at the time of the resentencing hearing. This reason, however, is unpersuasive. Despite the fact that defendant was not under sentence of death, merely hearing that another jury not only found him eligible for death but also imposed the death penalty may have diminished the jury's sense of responsibility in determining whether defendant *should* be sentenced to death.

In denying defendant's motion for a mistrial, the trial court distinguished *Davis* and *Hope* on the basis that both cases involved a second, unrelated offense for which the previous death penalty had been imposed. This case was different, according to the trial court, because the previous death sentence was imposed in the same case and had been reversed on appeal. Thus, reasoned the trial court, because the jurors would have likely known about the previous death sentence, disclosure, coupled with a cautionary instruction, was the most intellectually honest approach.

Although we recognize the difficult task that faced the trial court in conducting a second stage resentencing hearing and determining which information to impart to the jury panel, we decline to depart from the principles set out in *Hope* and *Davis*. With regards to this case, information regarding defendant's previous death

sentence was unwarranted. While it may have appeared reasonable at the time to inform the jury of the entire case history, including the previous death sentence, a cautionary instruction could have been given to the jury without explicitly mentioning the fact that defendant had been sentenced to death by a prior jury. This option was clearly illustrated by the trial court's actions in making introductory remarks to the second panel of jurors. In admonishing the second panel, the trial court told the jurors "not to concern [themselves] with the prior activity of the jury that held the original sentencing hearing." The trial court did not, however, inform the jury that defendant had previously been sentenced to death. This option sufficiently informed the jurors of the case's prior history without causing prejudice to defendant.

We conclude, therefore, that defendant has demonstrated circumstances reasonably justifying a conclusion that a juror was improperly prejudiced against him. See *People v. Bean*, 137 Ill. 2d 65 (1990). We find that the trial court's comments to the first panel of jurors was an abuse of discretion and constitutes reversible error.

Our disposition of this appeal obviates the need to address other issues raised by the parties. We do, however, caution the State with reference to its comments during closing arguments. Specifically, we find troubling the State's comment: "When Christ was on the cross there were two thieves with him, and he forgave the good thief and he promised him salvation in the next life, but he did not stay the execution." Although the character and scope of argument is left largely to the trial court (*People v. Tenner*, 157 Ill. 2d 341 (1993)), argument designed solely to inflame the passions of the jury is prohibited (*People v. Johnson*, 119 Ill. 2d 119 (1987)). On resentencing, the State should refrain from making any such emotional religious appeal for the death penalty.

For the forgoing reasons, we reverse defendant's

death sentence and remand for resentencing consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that this matter should be remanded to the circuit court for further proceedings. In my view, however, the remand should not be limited to a new sentencing hearing. Woolley should be granted a new trial on the underlying offenses. He is entitled to that retrial because the original proceedings in this case did not comport with the requirements promulgated by our court for the conduct of cases in which the State is seeking the death penalty. Those requirements are indispensable for achieving an accurate determination of innocence or guilt and are applicable to all capital cases now coming before us on review, including cases commenced before the rules were enacted. *People v. Hickey*, 204 Ill. 2d 585, 631-36 (2001) (Harrison, C.J., dissenting); see also *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 513 (2001).

Even if Woolley were not entitled to a new trial, I would regard the majority's disposition as inadequate. In remanding for resentencing, this court should impose a restriction its present opinion lacks. It should bar the State from seeking the death penalty. As set forth in my partial concurrence and partial dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law is void and unenforceable because it violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Absent a new trial conducted in accordance with the new rules, there is no basis for altering that conclusion.

308

JUSTICE KILBRIDE, also concurring in part and dissenting in part:

I agree in part with the majority that this cause must at a minimum be remanded for a new sentencing hearing, and I concur in that narrow portion of the majority's judgment. Nonetheless, I also dissent in part and I urge that defendant should receive a new trial. For the reasons set forth in my dissents in *People v. Hickey*, 204 Ill. 2d 585, 636-40 (2001) (Kilbride, J., dissenting), and *People v. Simpson*, 204 Ill. 2d 536, 581-85 (2001) (Kilbride, J., dissenting), I believe defendant's convictions and sentence should also be set aside because the trial proceedings were conducted without the minimum constitutional assurances established by the new supreme court rules governing capital cases. As I stated in my dissents in *Hickey* and *Simpson*, I believe that the new rules should be applied retroactively. See *People v. Caballero*, 179 Ill. 2d 205, 220-21 (1997). Thus, this cause should be remanded for a new trial conducted in compliance with the new rules.