THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALONZO PRATT, Defendant-Appellant.

First District (1st Division)   No. 1—06—3524

Opinion filed May 4, 2009.—Rehearing denied May 28, 2009.

46

HALL, J., dissenting.

Patricia Unsinn and Rebecca Levy, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Marie Q. Czech, and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

Following a jury trial, the defendant was convicted of first degree murder for the beating death of Charles Swanagan and sentenced to 40 years in prison. On appeal, the defendant contends he was deprived of his constitutional right to counsel by the trial court's denial of his request, on the day of trial, to revoke his *pro se* status and have counsel appointed. The defendant further claims the trial court's denial of his request for standby counsel was an abuse of discretion. Finally, the defendant contends, and the State concedes, that his mittimus must be amended to reflect the correct credit for the time he served in presentencing custody. We affirm the defendant's conviction and amend his mittimus.

## BACKGROUND

The defendant was initially represented by private counsel. On June 7, 2004, the third in a succession of private counsel was granted leave to withdraw and the court appointed the public defender to represent the defendant. On September 9, 2004, the defendant informed the court he did not want the public defender to represent him and tendered a motion for counsel other than the public defender. The court reminded the defendant his case was from 2001 and that he had been represented by three private attorneys, all of whom had resigned. The court denied the defendant's motion.

In November 2004, the assistant public defender assigned to the defendant's case filed a motion to suppress the identification and statements which the court denied after a hearing on March 16, 2005. At the hearing, the court resolved the credibility of the witnesses in favor of the police officer, but found the defendant "intelligent, coherent and quite articulate." The public defender continued to represent the defendant.

On September 6, 2005, the defendant tendered two motions that the court found to be "contradictory": the defendant filed anew his motion for appointment of counsel other than the public defender and a motion to proceed *pro se* on his capital murder case. The trial judge did not rule on the motion to proceed *pro se*. At the status hearing on December 9, 2005, the defendant inquired about his pending request to proceed *pro se*. The court informed the defendant that a decision had not been made and reminded him that he was still being represented by counsel. The defendant's case was continued to January 6, 2006.

On January 6, 2006, the trial court informed the defendant it was close to making a decision on whether the defendant would be allowed to proceed *pro se*, stating, "I am leaning toward letting you represent yourself." The State was instructed to redact discovery of all personal information in preparation for tendering to the defendant. On January 24, 2006, the State filed its intention not to seek the death penalty and tendered redacted discovery to the defendant. The court informed the defendant the assistant public defender would continue representing him until after the defendant reviewed the discovery. The court would then "go through the admonishment again with regard to representing yourself because you may have a change of heart after you've done that."

On March 1, 2006, the trial court addressed the defendant's request to represent himself *pro se*. The court explained that it had hoped the defendant would reconsider his request after reviewing the discovery and seeing the seriousness of the charges he faced. The court questioned the defendant, asking him whether he still desired to proceed *pro se*. The defendant replied, "Yes, sir." The court asked about the defendant's educational and work background. The defendant stated that he graduated from high school in 1975 and worked as a union electrician for more than 25 years. The defendant stated he could read and write and that although he had no formal legal training, he did take a civics class in high school. The defendant told the court that for the past seven years, while incarcerated, he had been "doing a lot of studying" and "going to the law library at least once a week." The defendant admitted he was taking medication for depression, but assured the court it would not interfere with his ability to represent himself.

The court explained that the defendant would be expected to abide by all of the trial rules and procedures, even though he may not know them. The defendant was told that a lawyer's role is to advise a defendant on such critical matters as whether to negotiate a plea or take a bench or jury trial. At trial, a lawyer would decide what evidence to introduce and what legal or factual arguments to make. The court instructed the defendant that by proceeding *pro se*, he would have no one to assist him with all of this. After each inquiry by the court, the defendant indicated he understood and still wished to proceed *pro se*. The defendant asked the court whether he was "entitled" to have standby counsel appointed. The court explained that the defendant was "not entitled to standby counsel." The defendant replied, "Okay. No problem." The request for standby counsel prompted the court to state, "See, now there's an indication that maybe you want a lawyer." The defendant assured the court, "I have a pretty good understanding of my defense." The court noted, "Knowing the case isn't the same thing as being a lawyer." The court then asked the defendant whether he still wanted to represent himself, "[e]ven though I'm not going to appoint standby counsel." The defendant responded, "Oh, it will work out." The trial court found the defendant voluntarily, knowingly, and intelligently waived his right to counsel. An order was entered granting the defendant access to the law library.

The same day, the defendant filed numerous pretrial motions, including a motion to suppress the lineup and suppress the deceased witnesses' statements, as well as a motion to wear civilian clothes at the trial. The court addressed all of the defendant's motions. By agreement, the jury trial was scheduled for August 21, 2006.

On August 21, 2006, the defendant filed certain motions and the cause was continued by agreement to August 28, 2006, for the jury trial.

On August 28, 2006, the following exchange occurred.

"DEFENDANT PRATT: I'm not able to continue. I'm on psychotropic medication. I just can't carry on. It's just too much for me. I can't handle this.

THE COURT: You're on psychotropic medication?

DEFENDANT PRATT: Yes. Yes. I can't handle this. I can't handle this.

THE COURT: Can't handle what?

DEFENDANT PRATT: This. This trial. This procedure. I'm an electrician. I'm not a lawyer. I can't handle this.

THE COURT: How many times did I admonish you, Mr. Pratt? How many times? You fired five—

DEFENDANT PRATT: 2,000, 3,000 times. I don't know.

THE COURT: You fired—you fired five lawyers. Mr. Boyke, Mr. Fahy, Mr. Sorenson.

DEFENDANT PRATT: They walked off. Okay. I'm not going to argue with you, Your Honor.

THE COURT: I was here when you told them; that—that you didn't want them to represent you. Robert LaJohnson, with years of experience—where did you get the psychotropic drugs? Have you been over to the Psychiatric Institute?

DEFENDANT PRATT: Yes."

The State objected to the defendant's request for a continuance, arguing the defendant was only trying to delay the start of his trial. The State answered it was ready to proceed. The State informed the court that through "great efforts" and "great expense," it had brought witnesses from Alabama, including one at the request of the defendant, based on the defendant's assertion that he was ready for trial. The State summarized the history of the defendant's case, including the trial court's numerous efforts to dissuade the defendant from proceeding *pro se* by admonishing him of the perils involved in self-representation.

The court noted that the defendant claimed to having been prescribed psychotropic drugs and felt "duty-bound to have [the defendant's claim] verified." The court ordered a psychiatric evaluation of the defendant and continued the case to the following day. The court reminded the defendant to be ready for trial the following day. The defendant responded, "[I]s there any way that I can—can have any kind of assistance? I'm an electrician." The court reminded the defendant, "I've asked you repeatedly not to go *pro se*." The defendant replied,

"I understand. I need assistance, Your Honor. I'm sorry. I'm sorry. Your Honor. I'm a[n] electrician. I can't—I cannot understand the legal terminology.

\* \* \*

It's just too much for me."

The court told the defendant it would not delay the trial.

The next day, the defendant filed a written motion seeking to withdraw as a *pro se* defendant. In his motion, the defendant claimed he was entitled to counsel and reiterated his contention that he could not understand the legal proceedings because of his lack of legal training. At the court's request, the psychiatric evaluator was examined concerning the defendant's fitness for trial. The doctor stated that although the defendant did not cooperate with him, he saw no evidence of cognitive impairment or psychosis. The doctor noted that the defendant had been taking the medications Trazadone and Zoloft. The

trial court found no bar to proceeding to trial. The trial court informed the defendant that his case was the oldest case on the call. The court reviewed the list of attorneys the defendant had dismissed and reminded the defendant that he had been admonished multiple times regarding the difficulty of proceeding *pro se*. The court denied the defendant's request for counsel, finding it a "transparent attempt to delay" trial.

The defendant proceeded to a jury trial. The court granted the defendant's prepared motion to exclude witnesses from the courtroom, commenting, "This is right on point and extremely well written." The defendant moved to exclude his prior conviction for battery. The court stated it would not rule on the motion until after the defendant decided to testify. The trial court explained certain trial matters to the defendant, including the jury selection process. The judge informed the prospective jurors the defendant was representing himself and allowed the defendant to conduct *voir dire*.

Four eyewitnesses testified in the State's case. The evidence established that the defendant beat 60-year-old Charles Swanagan, a disabled stroke victim, to death. Swanagan lived with numerous people, including his daughter, Janet Swanagan, the mother of the defendant's child. On February 15, 1999, at approximately 11:30 p.m., the defendant walked to Swanagan's house and asked to speak with Janet. When his request was refused, the defendant went around the house and threw rocks at Janet's window. Swanagan came to the door and informed the defendant he could not speak to Janet. Both men became frustrated. The defendant told Swanagan he just wanted his bicycle. Swanagan instructed Janet to go downstairs and get the defendant's bicycle. The defendant then grabbed Swanagan and threw him on the ground outside. The defendant kicked and punched Swanagan in his head and chest. The defendant dragged Swanagan to the curb of the street and continued to beat him. At some point, the defendant's bicycle was brought outside, which the defendant used to slam against Swanagan. The defendant stood on top of Swanagan and jumped on his chest. When the defendant walked away, he remarked, "[H]ow you all like that now." On February 26, 1999, Swanagan died. The medical examiner determined the cause of death was cerebral injuries due to blunt head trauma.

After the State rested, the defendant stated he did not wish to testify. When the trial court informed him not enough evidence had been presented to warrant a second degree murder instruction, the defendant proceeded to take the stand. The defendant testified that he went to Swanagan's house that night to retrieve some tools. He claimed he got into an argument with Floyd Swanagan, the decedent's

brother, when he asked for his tools. The argument escalated to a physical fight. As the defendant and Floyd struggled, Charles Swanagan came to the door and stabbed the defendant with a knife. The defendant testified he fell down, but Swanagan kept stabbing him. The defendant admitted dragging Swanagan out to the street and hitting him with a bicycle. The defendant acknowledged he was responsible for Swanagan's death, but claimed he was just fighting with him and did not know he would die. During cross-examination, the defendant conceded he did not know what happened to the knife Swanagan allegedly had. He also admitted he did not bleed or seek medical treatment after the alleged stabbing.

The defendant's prior conviction on June 28, 1999, for felony battery to a law enforcement officer or firefighter was admitted into evidence by stipulation.

During closing arguments, the defendant argued he acted in self-defense and did not intend to kill Charles Swanagan. The court instructed the jury on first degree murder, second degree murder and self-defense. During its deliberations, the jury sent out three notes. The first asked for clarification regarding the date on the report of Swanagan's medical examination. The court responded there was a typographical error on the report and instructed the jury to continue its deliberations. The second note asked the court to define "intent." The court provided the jury with a definition of "intent" from the Illinois Pattern Jury Instructions. The jury's third note requested a transcript of the medical examiner's testimony. Before the court could respond to the note, the jury returned its verdict. The jury found the defendant guilty of the first degree murder of Charles Swanagan.

The defendant continued *pro se* posttrial. His motion for a new trial was denied. Following the hearing on aggravation and mitigation, the court sentenced the defendant to 40 years in prison. The defendant's motion for a reduced sentence was denied. The defendant timely appeals, represented by the office of the State Appellate Defender.

## ANALYSIS

The defendant raises two substantive issues. He first contends the trial court violated his constitutional right to counsel by requiring him to continue proceeding *pro se* after he requested counsel. The defendant does not challenge the adequacy of his initial waiver of counsel, but argues that "once he later, unequivocally, requested counsel, the circuit court was required to allow [him] to proceed with representation." The defendant argues his specific request for counsel and his written motion to "withdraw as *pro se* defendant" operated as

a revocation of his previous waiver of counsel. The State responds that the defendant's request for counsel right before the start of the trial was "clearly a dilatory tactic" in light of his dismissal of the public defender after his failed representation by three private attorneys, his persistent demand to proceed *pro se*, and the last-minute nature of his request. The State contends that the defendant's position—"that his right to change his mind and be appointed an attorney is absolute"— misstates the law in light of the specific situation presented here. In the alternative, the defendant claims the trial court abused its discretion in not appointing standby counsel.

## Right to Revoke Waiver

The sixth amendment guarantees an accused the right to assistance of counsel; this right applies to the states through the due process clause of the fourteenth amendment. *People v. Burton*, 184 Ill. 2d 1, 21, 703 N.E.2d 49 (1998). The sixth amendment right to counsel also affords the individual the right to represent himself. *Burton*, 184 Ill. 2d at 21, citing *Faretta v. California*, 422 U.S. 806, 818, 45 L. Ed. 2d 562, 572, 95 S. Ct. 2525, 2532-33 (1975). To represent himself, a defendant must knowingly and intelligently waive his right to counsel. *People v. Johnson*, 75 Ill. 2d 180, 187, 387 N.E.2d 688 (1979). The waiver of counsel must be clear and unequivocal. We look to the overall context of the proceedings to determine whether the defendant "truly desires to represent himself." *Burton*, 184 Ill. 2d at 22. A defendant's waiver of his right to counsel applies to all subsequent proceedings unless circumstances suggest that the waiver is limited to a particular stage of the proceedings. *People v. Baker*, 92 Ill. 2d 85, 91-92, 440 N.E.2d 856 (1982); *People v. Cunningham*, 294 Ill. App. 3d 702, 704, 690 N.E.2d 1389 (1997).

### Standard of Review

The defendant frames the initial issue as an exercise of his sixth amendment right to counsel. He contends his right to counsel is "absolute" and includes his right "to change his mind and be appointed counsel." He contends that because a waiver of his constitutional right to counsel is involved and, according to his main brief, "there are no facts in dispute," the defendant asserts we should engage in *de novo* review of the trial court's ruling, citing *People v. Victors*, 353 Ill. App. 3d 801, 805, 819 N.E.2d 311 (2004).

Judge Lacy made a factual determination that the defendant's request for appointment of counsel was a "transparent attempt to delay" the trial. We are not sure whether the defendant's claim that the facts are not in dispute is a concession that the defendant did in fact engage in a dilatory tactic in requesting assistance of counsel on

the day of trial. We suspect not. It appears the defendant's claim that the "facts" are not in dispute is based on the defendant's clear request for appointment of counsel before his jury trial began. While it is uncontested that the request was made, it is apparent that Judge Lacy's decision to deny the defendant's motion to revoke his waiver of his *pro se* status was based on Judge Lacy's assessment of the entire proceedings below. We determine that Judge Lacy engaged in an exercise of discretion in denying the defendant's motion to appoint counsel. See *People v. Griffin*, 305 Ill. App. 3d 326, 329, 713 N.E.2d 662 (1999) (whether a defendant effectively revokes a waiver of counsel from an earlier proceeding rests within the sound discretion of the trial court). As such, we review Judge Lacy's ruling under an abuse of discretion standard. See *Redmond v. Socha*, 216 Ill. 2d 622, 634, 837 N.E.2d 883 (2005) (an abuse of discretion standard applies when the trial court actually engages in an exercise of discretion).

## Timeliness of Request

The State does not contest that the defendant made a clear and unequivocal request for assistance by counsel on August 28, 2006, when the jury trial was scheduled to begin. Nor does the defendant deny that had his request been granted the jury trial could not have proceeded. Without question, appointing counsel would have delayed the jury trial just as Judge Lacy determined was the defendant's true desire behind his request for counsel.

The State contends the defendant's motion for appointment of counsel in the context of this case is analogous to a request for substitution of counsel on the day of trial and, as such, we should engage in a review of the motion's timeliness. See *People v. Friedman*, 79 Ill. 2d 341, 403 N.E.2d 229 (1980). We agree.

"A defendant is entitled to the representation of counsel at all critical stages of a criminal prosecution, and this important right will not be taken away unless affirmatively waived by a defendant." *Burton*, 184 Ill. 2d at 22. "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. *** The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta*, 422 U.S. at 819-20, 45 L. Ed. 2d at 572-73, 95 S. Ct. at 2533. We understand *Faretta* to hold that where the right to self-representation has been invoked voluntarily, knowingly, and understandingly, it stands in equal footing to the right to assistance by counsel.

In the case before us, there is no dispute that the defendant voluntarily and intelligently elected to proceed as his own attorney.

The defendant affirmatively waived his right to counsel, electing to exercise his "sixth amendment right to represent himself." *Burton*, 184 Ill. 2d at 21. We agree with the State, the issue before us is whether the trial court erred in denying his day-of-trial request to have other counsel appointed. See *Friedman*, 79 Ill. 2d 341.

In *Friedman*, on the morning of trial, the defendant presented to the trial court, for the first time, his request to substitute private counsel for the public defender. *Friedman*, 79 Ill. 2d at 348. The defendant claimed he had suffered a "sudden loss of confidence in the public defender." *Friedman*, 79 Ill. 2d at 348. Private counsel appeared in court but indicated he could not proceed to trial immediately, "stating that defendant had first contacted him three days prior to trial." *Friedman*, 79 Ill. 2d at 348. The trial court determined that the request was not timely and denied the motion for substitution of counsel.

In *Friedman*, it appears only a motion for substitution of counsel was filed; no motion for a continuance was urged before the trial court. It was clear, however, that allowing the substitution of counsel would have unavoidably delayed the trial. Consequently, our supreme court began its analysis of the claimed error by examining whether a continuance should have been granted. The *Friedman* court noted that by statute, a "court may grant a continuance if the 'interests of justice' so demand (Ill. Rev. Stat. 1973, ch. 38, pars. 114—4(d), (f))." *Friedman*, 79 Ill. 2d at 347; now see 725 ILCS 5/114—4(d), (f) (West 2000). In deciding whether the interests of justice require that a firm trial date be set back, the supreme court observed that the trial court must balance competing interests: " 'criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial.' " *Friedman*, 79 Ill. 2d at 347, quoting Ill. Rev. Stat. 1973, ch. 38, par. 114—4(h) (now see 725 ILCS 5/114—4(h) (West 2000)). In cases like *Friedman*, including the case at bar, the initial question is "whether the denial of a continuance violates a substantive right of the accused." *Friedman*, 79 Ill. 2d at 348. The answer turns on the particular facts of the case. *Friedman*, 79 Ill. 2d at 348.

In *Friedman*, our supreme court determined that the denial of a continuance did not violate the defendant's substantive right to representation by counsel of his choice because the request was untimely. We believe the analysis in *Friedman* applies to the case before us. We look to the particular facts of this case to determine whether Judge Lacy properly denied the defendant's request to revoke his *pro se* status and have other counsel appointed, which, if granted, would have necessitated a continuance.

The defendant filed his motion to proceed *pro se* on September 6, 2005. Judge Lacy did not rule on the motion immediately; instead, Judge Lacy took substantial steps to ensure that the defendant duly considered his waiver of his right to counsel in light of the capital murder charge then pending against the defendant. Over the course of five months, Judge Lacy thoroughly and repeatedly admonished the defendant about the perils of proceeding *pro se*. While contemplating the defendant's motion to proceed *pro se*, Judge Lacy directed that redacted discovery be tendered to the defendant to ensure he fully grasped the nature of the evidence he was facing. With the discovery in hand, the defendant persisted in his desire to proceed *pro se*. On March 1, 2006, following full and complete admonishments once again by Judge Lacy as to the charges against him and the possible penalties he faced, the defendant's motion to proceed *pro se* was granted. The defendant does not question that he did in fact voluntarily, knowingly and understandingly waive his right to counsel culminating in the order of March 1, 2006, granting the public defender leave to withdraw. See *People v. Baker*, 92 Ill. 2d 85, 91, 440 N.E.2d 856 (1982) ("The record clearly establishes that his election [to proceed *pro se*] was voluntarily, knowingly and understandingly made").

The defendant acted as his own attorney over the next six months, filing various motions. At no time during this period did the defendant ever question his self-representation. A jury trial was scheduled to begin on August 21, 2006. For reasons unclear in the record, the parties treated the August 21 court date as a final status date. The defendant with the State discussed the various witnesses to be called at trial, with the State indicating that it had arranged for transportation for witnesses from Alabama. The State also accepted responsibility for arranging transportation of a defense witness from Alabama. The case was continued for seven days to August 28, 2006, for jury selection. The defendant did not on this final status date alert the trial court to any uncertainty he may have had in representing himself; nor did the defendant do so any time before August 28, 2006.

On the day the jury trial was due to commence, the defendant came to court claiming he could no longer proceed *pro se*. The defendant's contention at this point was not unlike the claim in *Friedman* where the defendant claimed to suffer a "loss of confidence" in the assistance provided by the public defender. *Friedman*, 79 Ill. 2d at 348. As the supreme court determined, this did not excuse the "defendant's lack of diligence." *Friedman*, 79 Ill. 2d at 348. Here, Judge Lacy found more than a lack of diligence in the purported loss of confidence voiced by the defendant in his self-representation; he found the defendant's day-of-trial motion for appointment of counsel was a "transparent attempt to delay the trial."

■ The colloquy between the defendant and Judge Lacy has been set out at length in the Background section. The defendant offers little challenge to the reasonableness of Judge Lacy's determination of the manipulative nature of the defendant's request. Judge Lacy's conclusion that the defendant engaged in a dilatory tactic is amply supported by the record. Consistent with our supreme court's direction in *Friedman*, the defendant's right to counsel "may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime." *Friedman*, 79 Ill. 2d at 349. Under the circumstances of this case, we hold Judge Lacy did not abuse his discretion in denying the defendant's motion, first made orally then in writing, seeking appointment of trial counsel on the day the jury trial was to commence. We find no basis to question Judge Lacy's conclusion that "the request was made solely for the purpose of delay." *Friedman*, 79 Ill. 2d at 349; compare *People v. Walker*, 232 Ill. 2d 113, 128, 902 N.E.2d 691 (2009) (State's claim that continuance request was a " 'delaying tactic' " was rejected in finding plain error in denial of continuance).

While having reached our conclusion, we acknowledge the language the defendant quotes in his main brief as providing seeming support for his claim that he has an absolute right to revoke his waiver of counsel: "[A] competent waiver of counsel by a defendant once made before the court carries forward to all subsequent proceedings *unless the defendant later requests counsel* or there are circumstances which suggest the waiver was limited to a particular stage of the proceedings." (Emphasis in original.) See *Baker*, 92 Ill. 2d at 91. Similar language is quoted from *Griffin*, 305 Ill. App. 3d at 329. We believe the defendant reads *Baker* and *Griffin* too broadly. While the quoted language appears to suggest that a request for counsel following a valid waiver must be granted if the defendant has a change of mind prior to the start of the trial, the precise holdings of *Baker* and *Griffin* are not so broad.

The precise holding in *Baker* is stated by the court: "[W]e hold, consistent with the weight of authority, that a competent waiver of counsel at arraignment by a defendant who is advised that he has a constitutional right to counsel at all stages of the proceedings is operative at the time of sentencing." *Baker*, 92 Ill. 2d at 95. The *Baker* defendant's claim that he was entitled to be "advised by the court at his sentencing hearing of his right to counsel" was rejected. *Baker*, 92 Ill. 2d at 89. In *Griffin*, the defendant entered a plea of guilty *pro se*. Prior to sentencing, the defendant had questions regarding his right to appeal. We held that the trial judge erred in not addressing the defendant's questions, which might have warranted the appointment

of counsel in this separate proceeding following his *pro se* entry of his plea of guilty. Neither *Baker* nor *Griffin* stands for the proposition the defendant asserts before us, that he had an unequivocal right to revoke his *pro se* status.

No case has been presented to us holding that a defendant's day-of-trial request for appointment of counsel should have been granted where a voluntary, knowing and understanding waiver of counsel has been made and the trial court has determined that the request masks a desire to delay trial. Nor do we believe this case should be the first. We reject the defendant's express argument that Judge Lacy's "concern that appointing counsel would delay the start of the trial should have been irrelevant to the trial court's analysis, as the court cannot force a defendant to unwillingly proceed to trial without the assistance of counsel." Judge Lacy did not err in denying the defendant's motion for appointment of counsel made on the day of his scheduled trial.

## Standby Counsel

The defendant next contends the trial court abused its discretion in denying his request for standby counsel. He first contends the trial court's statement that the defendant was "not entitled to standby counsel" reflects a *per se* policy of refusing standby counsel. The defendant also contends that the factors set forth by the supreme court in *People v. Gibson*, 136 Ill. 2d 362, 383, 556 N.E.2d 226 (1990), mandated appointment of standby counsel in this case.

The State responds that the defendant has forfeited review of the alleged error because he failed to object at trial and did not raise the issue in his motion for a new trial. See *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124 (1988). The defendant replies the waiver rule should be relaxed in the instant case because the issue involves the conduct of the trial judge. See *People v. Woolley*, 205 Ill. 2d 296, 793 N.E.2d 519 (2002).

Before addressing the respective claims before us, we are mindful that "*no* trial court in Illinois has been reversed for exercising its discretion to *not* appoint standby counsel, and this absence of reversals appears consistent with nationwide experience." (Emphasis in original.) *People v. Williams*, 277 Ill. App. 3d 1053, 1061, 661 N.E.2d 1186 (1996). "[T]he Illinois Supreme Court has yet to hold that the trial judge's failure to exercise his discretion, without more, necessarily requires reversal." *People v. Redmond*, 265 Ill. App. 3d 292, 304, 637 N.E.2d 526 (1994).

In *Gibson*, the supreme court noted criteria a trial court should consider in deciding whether to appoint standby counsel, listing three:

(1) the nature and gravity of the charge; (2) the expected factual and legal complexity of the proceedings; and (3) the abilities and experience of the defendant. *Gibson*, 136 Ill. 2d at 380. The supreme court stated that based on the record before it, the trial court's "failure to appoint standby counsel to assist the defendant would have been an abuse of discretion." *Gibson*, 136 Ill. 2d at 380. The trial court had initially appointed standby counsel, only to reverse itself. The supreme court ordered a new trial, however, on the trial court's "mistaken belief that the appointment was not authorized by statute." *Gibson*, 136 Ill. 2d at 383. In other words, the trial court mistakenly believed it had no discretion to appoint standby counsel.

Setting the issue of waiver aside, we are unpersuaded that the trial court abused its discretion in this case by refusing the defendant's last-minute request for standby counsel. We have no doubt that the court understood it had discretion to appoint standby counsel, but chose not to in light of the defendant's persistent requests to proceed *pro se*, as well as his clear statement that he did not want to be represented by the public defender, which had represented the defendant for nearly two years.

Nor does the seriousness of the charge the defendant faced persuade us that the defendant's request on the day of trial should have been granted. "The right of self-representation *** 'does not carry with it a corresponding right to the assistance of a legal advisor; one choosing to represent himself must be prepared to do just that ***.' " *Redmond*, 265 Ill. App. 3d at 304, quoting *Gibson*, 136 Ill. 2d at 383.

Judge Lacy's refusal to appoint standby counsel does not constitute reversible error.

### Sentencing Credit

■ Finally, the State concedes that the mittimus should be amended to accurately reflect the amount of time the defendant was in custody before sentencing. However, the parties differ by one in the number of the days the defendant served. We agree with the defendant that he is entitled to that additional day's credit. The mittimus is amended to reflect a total sentencing credit of 1,001 days.

### CONCLUSION

We affirm the judgment of the circuit court of Cook County and direct the clerk of the circuit court to correct the mittimus to reflect

1,001 days as credit for time spent in custody. See *People v. Revell*, 372 Ill. App. 3d 981, 992-93, 868 N.E.2d 318 (2007).

Affirmed; mittimus corrected.

WOLFSON, J., concurs.

JUSTICE HALL dissenting:

I respectfully dissent. I believe that under the facts and circumstances of this case, the trial court violated the defendant's sixth amendment right to counsel when it refused to allow him to withdraw his waiver of counsel and instead required that he represent himself at trial. I also believe the trial court compounded this constitutional error when it inexplicably denied defendant's request for standby counsel.

In ruling on a motion for a continuance to permit the substitution of counsel, a trial court must balance a defendant's sixth amendment right to counsel against the public's interest in the prompt and efficient administration of justice (*People v. Bingham*, 364 Ill. App. 3d 642, 645, 847 N.E.2d 903 (2006)), by considering the following factors: the length of the requested delay; whether other continuances have been requested and granted; the inconvenience to the litigants, witnesses, counsel, and court; whether the requested delay is for legitimate reasons or is contrived; whether the defendant contributed to the circumstances giving rise to the requested delay; whether defendant has other competent counsel prepared to try the case; and the complexity of the case. See *United States v. Burton*, 584 F.2d 485, 490-91 (D.C. Cir. 1978); *United States v. Leavitt*, 608 F.2d 1290, 1294 (9th Cir. 1979); see also *People v. Walker*, 232 Ill. 2d 113, 130-31, 902 N.E.2d 691 (2009) (trial court abused its discretion and committed plain error in denying defendant's motion for a continuance to allow defense counsel extra time to provide proper representation where court failed to consider relevant factors courts are generally required to consider before deciding whether to deny such a motion).

Analysis of these factors indicates the trial court abused its discretion in denying defendant a continuance to permit him to obtain counsel. The trial court stated that it was rejecting defendant's day-of-trial request for appointment of counsel out of concern for delay, but the record shows that after defendant made his request, the court continued the case for a day or two for a fitness evaluation and other matters.

At the very least, the trial court should have contacted previously appointed counsel who was familiar with the case to determine how

long it would take him to prepare for trial. Moreover, there is no indication the trial court ever inquired as to the potential inconvenience, if any, the parties or witnesses might experience if a continuance were granted. In addition, there is no indication that the State was any less responsible for the delays where it requested and was granted a number of continuances and where approximately three-quarters of the continuances were by agreement. The record also shows that several of the continuances were due to the fact that private counsels withdrew because defendant lacked adequate funds.

Another extremely important factor to consider is that the trial court's decision resulted in defendant—who had recently been receiving psychotropic medication—representing himself in a complex jury trial for first-degree murder without any assistance of counsel. The cases the State and majority rely upon are fundamentally distinguishable from the present case, because in those cases the denial of the request to substitute counsel resulted in the defendants proceeding to trial with unwanted counsel as opposed to no counsel at all.

Finally, I believe the trial court compounded the constitutional error when it inexplicably denied defendant's request for standby counsel. See, *e.g.*, *German v. State*, 268 Ind. 67, 73, 373 N.E.2d 880, 883 (1978) (appointing standby counsel is the recommended procedure to preserve a defendant's rights when he elects to represent himself at trial); *Jackson v. State*, 441 N.E.2d 29, 33 (Ind. App. 1982) (appointment of standby counsel is an appropriate prophylactic device when a defendant assumes the burden of conducting his own defense).

I would vacate the defendant's conviction and remand for a new trial. Accordingly, I respectfully dissent.