# Illinois Official Reports

## Appellate Court

---

*People v. Gibson*, 2017 IL App (1st) 143566

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD GIBSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3566 |
| Filed | October 10, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-17177; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Imran Ahmad, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Jon Walters, and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1        In the years before his trial for murder and concealment of a homicidal death, Edward Gibson rejected three public defenders and decided to represent himself. But just before *voir dire*, Gibson asked the trial court to reappoint the public defender's office. The trial court found that this was a delay tactic and denied the request, so Gibson refused to enter the courtroom for his own trial. He was tried *in absentia*, without counsel, and convicted of both counts.

¶ 2        Gibson now challenges the trial court's refusal to appoint the public defender's office when he made his last-minute request. We find that the trial court did not abuse its discretion, since it found that Gibson's request was an attempt to delay the trial proceedings. Gibson also argues that the trial court should have appointed him counsel before trying him *in absentia*, but this issue is foreclosed by *People v. Eppinger*, 2013 IL 114121.

¶ 3                                        BACKGROUND

¶ 4        In September 2008, Gibson was indicted for first degree murder and concealment of a homicidal death. The public defender's office was appointed to represent him, and an assistant public defender appeared on Gibson's behalf in October 2008.

¶ 5        In a May 2009 court appearance, Gibson complained about his counsel and asked to have a *pro bono* attorney appointed or to represent himself *pro se*. The trial court questioned Gibson about his ability to represent himself, told Gibson that it would not appoint a *pro bono* attorney, and arranged to have Gibson speak with a supervisor from the public defender's office. At a court appearance two months later, Gibson was represented by two other assistant public defenders, Brown and Hirschboeck.

¶ 6        In September 2009, Gibson told the trial court that he wanted to represent himself. The trial court warned Gibson that this was a bad idea, questioned him on his ability to represent himself, and admonished him of the charges against him. Mid-admonishment, Gibson collapsed on the floor, and the court recessed. When the court reconvened two weeks later, Gibson told the trial court he wanted Brown and Hirschboeck to represent him.

¶ 7        But in October 2009, Gibson changed his mind and told the court he wanted to represent himself until he could find a *pro bono* attorney. The trial court again admonished Gibson as to the dangers of self-representation and told Gibson that the court would not appoint a *pro bono* attorney or give him any special privileges if he represented himself. Gibson reiterated his desire to represent himself.

¶ 8        At the November 2009 court date, Gibson represented himself but continued to complain about his former public defenders. He asked for appointment of a *pro bono* attorney, but the trial court denied it.

¶ 9        At the January 2010 court date, the trial court asked Gibson if he wanted to have the public defenders reappointed. Gibson said no and continued to complain about his former attorneys. In April 2010, Gibson asked for appointment of counsel other than the public defender, which was denied.

¶ 10       Between January and June 2011, Gibson several times asked the trial court to appoint him a *pro bono* attorney and continued to complain about his former public defenders. The trial

court continued to deny him appointment of a *pro bono* attorney or standby counsel to assist Gibson, but offered to reappoint the public defender's office. Gibson declined.

¶ 11    In July 2011, Gibson again asked for an attorney, and the trial court offered to reappoint the public defender's office while warning Gibson that Brown would probably be assigned to his case, since she had represented him previously, and that the court would not allow Gibson to fire Brown again because it would be a delay tactic. Gibson agreed to have the public defender's office reappointed. But when Brown and Hirschboeck appeared for Gibson at the next court date, Gibson complained about them again and stated that he wanted to represent himself. The judge warned him that this decision would be final: "[I]f you come back next week or you come back on the trial date and ask me to re-appoint the Public Defender or ask me for an attorney other than the Public Defender, it will be denied." Gibson stated that he wanted to go *pro se*, though the trial court warned him it was a mistake, and the court admonished him and allowed the public defenders to withdraw.

¶ 12    In August 2011, Gibson represented himself but continued to complain about his former attorneys and asked for a *pro bono* attorney, which the trial court denied. In October 2011, Gibson asked for an attorney from the "Murder Task Force" (a group within the public defender's office). The trial court pointed out to Gibson that public defender Brown was a member of the murder task force, and Gibson stated that he needed time to decide whether he wanted the public defender's office to represent him. In December 2011, Gibson again asked for an attorney from the murder task force. The trial court stated that it would reappoint the public defender's office, but Gibson would not be able to pick his public defender, and Brown or Hirschboeck would probably be reassigned to the case. The trial court denied Gibson's request for a murder task force attorney other than Brown or Hirschboeck and denied standby counsel.

¶ 13    Between February and May 2012, Gibson repeatedly asked the trial court for an attorney from the murder task force. The trial court explained that it could reappoint the public defender's office, but that Brown and Hirschboeck would probably be reassigned to the case, and the court would not direct otherwise. The trial court also denied Gibson's motions for appointment of a *pro bono* attorney and commented on Gibson's motions: "[W]e keep going round and round and round in circles."

¶ 14    The case was set for jury selection on June 4, 2012. Gibson told the trial court he was not ready to proceed. The trial court told Gibson that if it reappointed the public defender's office, the case would probably be assigned to Brown and Hirschboeck. Gibson stated that he would accept Brown and Hirschboeck, but the trial court found that Gibson was trying to delay trial and denied his request for reappointment of the public defender's office. Gibson represented himself during *voir dire*.

¶ 15    On June 6, the first day of trial, the sheriff told the trial court that Gibson had refused to leave the lockup and enter the courtroom. The trial court (accompanied by the State's attorneys and the court reporter) went into the lockup area to see Gibson, who told them that he would not come out because he needed a proper lawyer. The trial court stated that it had addressed this issue before and warned Gibson that trial would go forward without him: the jury would be told that Gibson was present in the building, a microphone would be set up to allow Gibson to hear all of the proceedings, and Gibson would be asked whether he wanted to present an opening statement or cross-examine each witness. However, Gibson would not be able to see the State's exhibits. Gibson again stated that he would not come out of the lockup, and trial

began without him. The trial court informed the jury that Gibson had chosen not to be present, but could hear everything, and that the jury should not hold his absence against him.

¶ 16    When it was time for Gibson to give his opening statement, the trial court sent the sheriff to the lockup to ask Gibson whether he wanted to give a statement; the sheriff reported that Gibson did not answer. The same thing happened after the first witness testified, and the trial court recessed and went to the lockup to ask Gibson again. He refused to answer, and the trial court warned him that his absence meant he couldn't object to any of the State's questions or see the State's exhibits. Gibson stated that he could not adequately represent himself and asked for a lawyer from the murder task force. The judge denied his request, stating "[W]e're beyond that now."

¶ 17    At the conclusion of testimony from each witness, the trial court instructed the sheriff to go to the lockup and ask Gibson whether he wanted to cross-examine. The sheriff then told the judge (off the record) that Gibson had not responded to the sheriff's question, or had said no, and the trial court told the jury that Gibson had chosen not to cross-examine each witness.

¶ 18    During the lunch break on the first day, the trial court again went to the lockup and asked Gibson whether he wanted to participate; Gibson again asked for an attorney. The trial court stated that these requests had already been ruled on, and the trial court did not want to appoint an attorney mid-trial. At the end of the first day, the trial court again went back to the lockup and told Gibson that if he changed his mind, he could participate on the second day of trial.

¶ 19    On the morning of the second day, the trial court went back to the lockup to ask again, and Gibson declined, reiterating his request for a lawyer, which the trial court denied. The trial court followed the same procedure for cross-examination as the day before.

¶ 20    At the end of the State's case, the trial court again went back to the lockup and asked Gibson whether he had any motions to present or wanted to testify. Gibson repeated his complaint about not having an attorney. The trial court admonished Gibson as to his right to testify and asked him whether he wanted any particular jury instructions. Gibson did not respond to either topic and again asked for an attorney from the murder task force, which the trial court denied. Gibson did not participate in the jury instruction conference.

¶ 21    On the third day of trial, Gibson chose not to present a closing argument. The jury convicted him on both counts. The trial court asked Gibson if he wanted to have the public defender's office reappointed to handle his posttrial proceedings, warning him that Brown and Hirschboeck would probably be reappointed as the trial court did not have any control over assignments within the public defender's office. Gibson again complained about his former attorneys and asked for a *pro bono* attorney, which was denied. The State suggested that the trial court reappoint the public defenders until the next court date, and the trial court did. At the next court date, Gibson stated that he needed 30 days to decide whether he wanted the public defenders, but the trial court denied that time. Gibson decided to keep the public defenders.

¶ 22    Brown and Hirschboeck appeared on Gibson's behalf at the next court date and filed a motion for a new trial, arguing that the trial court had erred in not reappointing the public defender for Gibson's trial, and in holding Gibson's trial *in absentia* without appointing counsel. The trial court denied the motion and sentenced Gibson to 35 years of imprisonment.

ANALYSIS

Denial of Appointment of Counsel

The sixth amendment guarantees a defendant the right to counsel. *People v. Burton*, 184 Ill. 2d 1, 21 (1998). The same amendment also gives a defendant the right to represent himself or herself. *Id.* To do so, the defendant must knowingly and intelligently waive the right to counsel, in a clear and unequivocal manner. *People v. Pratt*, 391 Ill. App. 3d 45, 52 (2009). The waiver applies to all subsequent proceedings (unless circumstances suggest the waiver is limited to a particular stage). *Id.* If a defendant wishes to revoke that waiver later on, it is within the trial court's discretion whether to appoint new counsel. *Id.* at 53. The trial court need not allow the defendant to revoke the waiver if the court believes that the defendant is trying to delay the trial proceedings. *People v. Jones*, 2015 IL App (2d) 120717, ¶ 36.

Gibson does not argue that his initial waiver of counsel was invalid, only that the trial court abused its discretion in not reappointing the public defender's office when Gibson made his final request, just before *voir dire*. The record on this issue is extensive, stretching over a period of years and dozens of court dates. Gibson was repeatedly told that, despite his unhappiness with a trio of public defenders, he could not choose a fourth public defender and the trial court would not appoint him an attorney from outside that office. Gibson changed his mind several times and was then warned by the trial court that his decision to go *pro se* was final. The record supports the trial court's finding that Gibson was attempting to delay proceedings by trying to accept Brown and Hirschboeck just before *voir dire*, after rejecting the idea at several previous court dates. *Pratt*, 391 Ill. App. 3d at 56 (trial court did not abuse discretion in denying appointment of counsel on day trial was set to commence and finding that defendant's request was delay tactic). The trial court handled itself with commendable patience and propriety. We cannot say that the trial court abused its discretion.

Denial of Counsel During Trial *in Absentia*

Next, Gibson argues that, since his trial proceeded *in absentia*, the trial court was required to appoint him counsel under section 115-4.1(a) of the Code of Criminal Procedure (725 ILCS 5/115-4.1(a) (West 2012)). That statute states that if a defendant "fails to appear for trial" and the State proves that the defendant "is willfully avoiding trial," he may be tried *in absentia* but must be represented by retained or appointed counsel. *Id.* During that trial, all the statutory and constitutional rules will still apply "the same as if the defendant were present in court and had not either forfeited his bail bond or escaped from custody." *Id.* In *Eppinger*, 2013 IL 114121, our supreme court held that, based on the statutory language and the legislative history, this statute does not apply to in-custody defendants (like Gibson) who are present in the court building but simply refuse to leave the holding cell. *Id.* ¶ 40. So, Gibson is not entitled to appointment of counsel under this statute.

Gibson argues that *Eppinger* was wrongly decided, but offers no precedent to the contrary. We must follow the statutory interpretations of our supreme court. Gibson argues that the *Eppinger* rule offers greater protection to bail jumpers (who would be tried *in absentia* but be granted counsel) than in-custody defendants like him (who would be tried *in absentia* without the right to appointed counsel). The *Eppinger* court acknowledged this anomaly, deciding that it was preferable to a rule holding that the statute applies to all defendants regardless of physical location: it "would prevent manipulation of the right to counsel; in-custody *pro se* defendants would not gain an advantage from their voluntary absence." *Id.* ¶ 31. This concern

holds true—the timing of Gibson's various requests supports the trial court's finding that he was attempting to delay proceedings by alternately requesting and rejecting representation by public defenders.

¶ 30        Gibson argues that his case is *sui generis* because it involved both the waiver of counsel and a trial *in absentia*, excusing him from citing precedent to support his point. But the defendant in *Eppinger* was appointed a public defender, and after he expressed dissatisfaction with that attorney, the trial court appointed him a second public defender. *Id.* ¶ 4. A week before the first scheduled trial date, Eppinger requested to represent himself; after the proper admonishments, the trial court allowed him to do so. *Id.* ¶ 5. For several months, he represented himself, filing motions, including a request for standby counsel that was denied. *Id.* ¶¶ 6-8. On the morning of trial, he reversed himself, asking the court to appoint counsel. *Id.* ¶ 10. The trial court denied that motion, finding it was a delay tactic, and Eppinger responded by refusing to come out of the holding cell to participate in the first day of jury selection. *Id.* ¶¶ 10-11. He did participate in the remainder of his trial. *Id.* ¶ 12.

¶ 31        Gibson is apparently not the first defendant to express his last-minute reluctance to represent himself by refusing to be present in the courtroom. He has not provided us with any reason why the interaction of these two issues (self-representation and trial *in absentia*) should lead us to a different result on either. The trial court did not abuse its discretion in refusing to reappoint the public defender when Gibson made his final request, and did not err in allowing a trial *in absentia*, sans counsel, when Gibson refused to come out of the lockup.

¶ 32        Affirmed.