2022 IL App (1st) 161172-U
No. 1-16-1172

FIRST DIVISION
September 19, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04 CR 23279 |
| | ) | |
| BOBBIE LEE HARRISON, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Michelle Pitman, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Coghlan and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held:* Judgement affirmed over defendant's challenge to his sixth amendment right to counsel of his choice where the trial court found that private counsel's request for leave to file an appearance on the day that the case was set for a jury trial, after it had been pending for more than eleven years, constituted a delay tactic. The trial court did not err in failing to *sua sponte* request a fitness hearing when defendant stated that he had not taken his medication right before the jury trial commenced where there was no real, substantial, and legitimate *bona fide* doubt as to defendant's mental capacity to meaningfully participate in his defense and cooperate with counsel. Defendant also did not establish that the trial court failed to conduct a proper preliminary hearing pursuant to *Krankel* regarding defendant's post-trial claim of ineffective assistance of post-trial counsel.

¶ 2  Defendant, Bobbie Lee Harrison, was convicted of three counts of aggravated criminal sexual assault and one count of aggravated kidnapping. Defendant asserts: (1) his sixth amendment right to counsel was violated when the trial court denied private counsel leave to file an appearance on the day the case was set to proceed to a jury trial; (2) the trial court erred when it failed to *sua sponte* order a fitness hearing at the time that defendant indicated that he had not taken his medication right before the jury trial commenced; and (3) this court should remand for a hearing pursuant to *People v. Krankel*, 102 Ill.2d 181 (1984), after the trial court failed to conduct a preliminary inquiry into his claim of ineffective assistance of post-trial counsels.

¶ 3  BACKGROUND

**Pre-trial Proceedings**

¶ 4  Defendant's case was pending for more than eleven years before his jury trial on May 11, 2015. During that time, defendant was initially represented by an assistant public defender before he elected to proceed *pro se* and waived his right to counsel, and later he twice sought and received the assistance of standby counsel.[1] When defendant was representing himself *pro se*, the trial court repeatedly asked defendant if he wanted the court to appoint a public defender to assist him. On numerous occasions, defendant sought continuances, which the trial court granted, after he expressed the desire to secure private counsel. At one point, in 2012, he informed the trial court that he had hired an attorney. However, this counsel never appeared in this case, and the record does not contain any explanation for the failure of counsel to appear. In total, prior to trial, the trial court found 16 different times that defendant's request for a continuance constituted a delay tactic.

---

[1] The record filed by defendant is incomplete and, as a result, it is unclear why defendant's first standby counsel did not continue to assist him. However, on a subsequent date, the trial court stated that standby counsel was no longer assisting defendant because "[defendant] didn't want her anymore…" The second standby counsel withdrew after defendant filed a motion alleging misconduct.

¶ 5    On August 7, 2006, defendant's case was set for a jury trial, and both parties answered ready for trial. While the jurors were standing in the hallway, defendant's counsel informed the trial court that defendant was now refusing to sign a previously agreed upon stipulation to the DNA evidence. The trial court released the jurors and continued the case. On the next court date, defendant stated that he no longer wanted the public defender to represent him, he waived his right to counsel and proceeded *pro se.*

¶ 6    Defendant filed a motion for substitution of judge, and a hearing on that motion was held on January 24, 2007, before the Honorable Thomas Panichi. Judge Panichi denied defendant's motion. Defendant appealed the denial of his motion for substitution of judge. We dismissed his appeal after the Office of the State Appellate Defender filed a motion to dismiss the appeal and agreed with their contention that this court lacked jurisdiction to entertain defendant's appeal because the trial court's order was not a final appealable order. *People v. Harrison*, 372 Ill.App.3d 153 (1st Dist. 2007).

¶ 7    On February 1, 2008, after defendant's appeal was resolved, the matter was reinstated at the trial level. The State answered ready for trial. At that time, defendant filed a motion seeking a bar association attorney or a *pro bono* attorney, which the trial court denied. Then, defendant informed the trial court that he wanted the assistance of standby counsel. On the next court date, defendant accepted an assistant public defender as standby counsel to assist him.

¶ 8    On June 4, 2008, during a status date, the trial court *sua sponte* ordered a fitness examination after defendant informed the trial court that he was taking Prozac, Prozone, and Seroquel. On July 24, 2008, standby counsel informed the trial court that defendant had been found fit to stand trial with medication. In a letter to the court, Doctor Roni Seltzberg found that defendant was fit to stand trial with medication as he "demonstrated understanding of the nature of the charges against

him, the purpose of the proceedings against him, and he has the ability to assist counsel in his defense if he so chooses." Doctor Seltzberg wrote that defendant was prescribed two antidepressants, Prozac and Sinequin, and "[t]here was no indication of any clinically significant adverse effect from the medication on his cognitive functioning, behavior or fitness for trial."

¶ 9    On August 29, 2008, defendant asked the trial court to have him evaluated by a "private psychiatrist" because he had been having "mood swings and suffering other psychological problems." The trial court denied his request for a "private psychiatrist," but defendant accepted the trial court's offer to have him evaluated by a second psychiatrist.

¶ 10    On November 14, 2008, the trial court received a letter from the Forensic Clinical Services Department stating that defendant refused to cooperate in the examination. Doctor Echevarria, the staff psychiatrist, wrote that he could not form an opinion due to defendant's noncompliance with the evaluation. In response, defendant again requested that he be evaluated by a private psychiatrist. The trial court found that defendant was "stalling this matter" and informed him that he needed to cooperate with the examination.

¶ 11    In a letter dated December 31, 2008, Doctor Sharon Coleman wrote that defendant was fit to stand trial, and "[w]hile he adamantly maintains that he will not work with standby counsel or his assigned Judge and is unable to represent himself, he demonstrated and [sic] understanding of the nature and purpose of the proceedings against him and does have the capacity to work collaboratively with counsel in his defense, if he so chooses."

¶ 12    In a letter dated January 21, 2009, Doctor Dawna Gutzmann wrote that defendant was fit to stand trial with medication. She concluded that defendant demonstrated an understanding of the charges against him, comprehended the nature of courtroom proceedings, correctly identified the roles of various courtroom personnel, and could assist counsel in his defense. At that time,

defendant was prescribed Prozac, an antidepressant medication, to be taken orally each morning. The doctor concluded that "defendant needs to continue to take this medication, along with appropriate psychiatric monitoring, in order to maintain his fitness. Furthermore, this medication does not interfere with the defendant's fitness to stand trial."

¶ 13    On September 29, 2011, defendant filed a motion for substitution of judge. Defendant's standby counsel asked leave to withdraw because defendant had alleged misconduct against her in his motion for substitution. The trial court granted the request. A hearing on this motion was held before the Honorable Brian Flaherty, who denied defendant's motion. Defendant subsequently filed a notice of appeal. For a second time, we found that we lacked jurisdiction to entertain defendant's appeal because the trial court's order was not a final appealable order. *People v. Harrison*, 1-12-0767.[2]

¶ 14    In 2012, after the trial court denied defendant's motion to quash arrest and suppress evidence, the trial court sought to set a date for trial and asked defendant whether he wanted a bench or jury trial. Defendant responded, "Okay, you all pick your own trial, I am not going to participate in it." When the trial court reminded him that he had already been admonished that he could be tried in absentia, defendant acknowledged that he had received that warning. He stated, "So I'll be better off appealing my case since I was denied due process since I have been in your courtroom….I don't need no civilian clothes, I am not going to participate…"

¶ 15    On August 30, 2012, defendant stated that an attorney, Jeffrey Nusland, visited him in jail and would be representing him. When the trial court determined that an attorney was not present that

---

[2] On August 26, 2014, the trial court stated that it had received this court's mandate affirming the denial of defendant's motion for substitution of judge.

day, it continued the case for the new attorney to file an appearance. On the next court date, no attorney appeared to represent defendant.

¶ 16　After defendant's case was reinstated, following his second interlocutory appeal, the trial court granted several continues for defendant. Then, on April 8, 2015, the trial court informed defendant that the jury trial would commence on May 11, 2015. Defendant informed the trial court that he could not go to trial because he had been denied due process. In response, the trial court stated, "Well, you've had eleven years to get this ready, sir. You're delaying this matter, I told you that."

¶ 17　On May 11, 2015, the State answered ready for trial. At that point, Michelle Gonzalez, a private counsel, asked leave to file her appearance. The following colloquy occurred:

> [DEFENSE COUNSEL]: Good morning, your Honor. Michelle Gonzalez, I'm requesting leave to file my appearance on behalf of Bobbie Harrison.
>
> [COURT]: It's set for jury, Mr. Gonzalez.
>
> [DEFENSE COUNSEL]: That's right.
>
> [COURT]: If you file your appearance, the matter is set for trial.
>
> State, are you ready on this ten-year-old case?
>
> [PROSECUTOR]: Yes, your Honor. We're answering ready.
>
> [DEFENSE COUNSEL]: Your Honor, I haven't received any discovery. I would be asking for discovery - -
>
> [COURT]: That's denied. That will be denied. The case has been pending ten years. [Defendant] has had ample opportunity to hire counsel and to be prepared for trial. The case has been pending since 2004.

[DEFENSE COUNSEL]:  Yes, your Honor. And I think there's issue of DNA, and I believe if you tender me discovery today, if two DNA results are there, then we would be prepared.

[COURT]:  Counsel, I'll give you leave to file your appearance if you're ready. I'm about to get a jury down here shortly. The State is ready. The defendant has been delaying these proceedings for years. So if you're prepared to proceed to trial, certainly file your appearance and be prepared to select a jury today. The Court finds this is another delay by [defendant] for a ten-year-old case.

[DEFENSE COUNSEL]:  Your Honor, we won't delay it more than one or two court dates.

[COURT]:  That's denied, Counsel. It will not be delayed any further.

[PROSECUTOR]:  Judge, I can have a copy of the DNA ready for counsel in like ten minutes.

And so counsel is aware, there are not two DNA results; there is only one.

[DEFENSE COUNSEL]:  Judge, we were told there are two. I don't know if I could look at the file.

[COURT]:  If you file your appearance, you need to be prepared to proceed to trial.

[DEFENSE COUNSEL]:  Fine.

[COURT]:  I'm not going to grant you a continuance.

[DEFENSE COUNSEL]:  Fine. So if I could - -

[COURT]:  I'm sorry. What does "fine" mean?

[DEFENSE COUNSEL]:  If I could see the discovery and see the case file, your Honor.

[COURT]: Sure.

[DEFENSE COUNSEL]: Because we were told there's two different DNA results.

[COURT]: When were you hired?

[DEFENSE COUNSEL]: I don't - - I don't remember. A couple weeks ago maybe.

[COURT]: It couldn't have been a couple weeks ago. [Defendant] was just here.

[DEFENDANT]: No. It's been over a month. It's six, seven weeks.

[PROSECUTOR]: So is that since they've been hired? Can I inquire, Judge, as to when this law firm was hired by [defendant]?

[COURT]: She doesn't remember she's indicating. You don't remember?

[DEFENSE COUNSEL]: Two weeks ago, I believe, your Honor. I don't remember exactly.

[COURT]: It would have been incumbent upon you to advance this case instead of the day of jury trial to step up and file an appearance.

[DEFENSE COUNSEL]: Your Honor, I don't recall that this was set for jury.

[COURT]: You didn't recall? When your client hired - -

[DEFENSE COUNSEL]: If he did tell me, I don't remember.

[COURT]: When he hired you, he didn't tell you he was set for jury trial?

[DEFENDANT]: Could I say one thing?

[COURT]: No. One second. I would like an answer. He didn't tell you he was set for jury trial?

[DEFENSE COUNSEL]: I can't recall if he did.

[COURT]: You can't recall that?

[DEFENSE COUNSEL]:  Yes. We asked if he ever went to trial. I remember that. He never went to trial. We thought it was because it was such an old case. We didn't understand.

[COURT]:  No. It's set for jury final today. It is set for jury, Counsel. So certainly you can file you're [sic] appearance, but be prepared to select a jury today. [Defendant] has had years to get this case ready, and on the day of jury to step up with counsel hen he's had years, and now the State has brought their witnesses in. The case has been set for a long time.

[DEFENSE COUNSEL]:  Your Honor, I haven't had the discovery for those years. I'm just getting in on the case. I'm just asking for discovery and time to prepare.

[COURT]:  It's a very simple question. If you file your appearance - - I will let you file your appearance, but be prepared to select a jury.

[DEFENSE COUNSEL]:  Fine.

[PROSECUTOR]:  Judge, for the record, as recently as two weeks ago, [defendant] filed four new motions that were penned in his own hand, not under the guise of - -

[COURT]:  I see them. They were filed pro se. This is the first the Court has heard of any attorney representing [defendant]. Therefore, I'm not going to delay these proceeding any further. He's been pro se in front of me for years indicating he wishes to proceed pro se. Now I've made the case proceed to trial, and I'm not going to delay any further.

Take a look at everything, Counsel. Let me know when you're ready, and I'll recall it.

¶ 18      When the case was recalled, private counsel stated that she was not prepared to go to trial that day, but asked leave to file an appearance and for an additional date after receiving discovery. The trial court asked the State for its position regarding defendant's request for additional time:

> "Judge, I would say that this is another of this defendant's delay tactics.
>
> And just for the record, this case was charged in 2004. In 2006, while this defendant was represented by a public defender, this case was ready to do to a jury trial. As a matter of fact, as your Honor might recall, the jurors were actually outside the door waiting to come in to be chosen at the time that this defendant then fired his attorney. That was in 2006.
>
> Just for the record, we're now in 2015. From 2006 to 2015, this defendant has been - - gone through several different public defenders trying to appease him. They have brought other people from their office. No one would suffice.
>
> He has filed SOJ motions. He's gotten those SOJ motions to the appellate court and back again on two occasions.
>
> Judge, he has filed in excess of 80 handwritten motions. We have heard all of those motions. He had a lengthy motion to quash arrest and suppress evidence back in 2010, in which your Honor repeatedly let him recall witnesses, re-question witnesses, and gave him a couple of dates to do so so that the motion was not completed in one day.
>
> This defendant has also claimed illness on many occasions. He has left this lockup and the transport bus to go to the hospital and then would appear the following day.

He has made numerous remarks to this Court that he did not want to go to trial today, that he would not be ready, and he has most recently as April 27th, which was two weeks ago today, again filed four more motions, all of which have already been addressed by this Court repeatedly. He retitles them. He buries other content within them so that it looks like something new, and yet as you go through them, your Honor, you see it's the same motions over and over and over again.

This Court told the defendant he would be going to trial today. And toward that end, The State found the victim, who has moved out of this territory and requires travel. This is once again been [sic] brought up where she has been made at the ready to have to come and testify about being raped over ten years ago. She is being transported here today. Tickets have been prepared, hotel accommodations have been prepared, all at the expense of the State.

\*\*\*

And I would like to further state, Judge, just by one statement that this attorney made, I know that this defendant has told this attorney a completely different story about the strength of his evidence, and I'm sure that is what made this law firm salivate to come and take this case. But as we know, you and I and anyone else who has been in this courtroom, this defendant does this over and over and over again. He attempts to take on an attorney, and then he fires them. He doesn't work with them. He argues that they aren't working with him. These are all dilatory tactics to once again delay this…"

¶ 19    In response, private counsel stated that she would need a 30-day continuance to prepare for trial and, at that point, could set a date for trial. The trial court found that defendant's request for

private counsel to file an appearance on the day of trial constituted a delay tactic and reiterated its concern that counsel did not know when she was hired, and was appearing on the day of trial, with no prior notice, in a case that had been pending for over ten years. The trial court also noted that it had previously offered to appoint the Public Defender's Office to assist defendant, but defendant would accept them and then fire them. The trial court further noted that defendant had previously said that "he will never go to trial in front of me." Ultimately, the trial court denied private counsel leave to file her appearance.

¶ 20    The trial court then denied defendant's requested continuance. At that point, defendant stated, "I'm not participating in no trial. I'm not ready. I am denied my due process." The trial court stated that "…you are not going to delay these proceedings any further…" While the trial court and both parties discussed the pending motions recently filed by defendant, including his motion for substitution of judge, defendant stated, "But let me just say that I haven't had my medication in ten days. I've been in the hospital." The trial court transferred this case to the supervising judge for further review on his motion for substitution of judge.

¶ 21    After his motion for substitution was denied, the trial court re-called defendant's case and asked defendant if he sought a jury trial.  Defendant responded, "I object to trial. I'm not going to trial. So if the officer can please take me on back. I told you, I'm denied due process. I cannot go to trial without due process. Out of all these years, you've been saying get a lawyer." The trial court stated that defendant had not been denied due process, but he persisted in refusing to participate in the trial. Defendant stated, "I'm not - - I haven't had my psych meds for 15 days. I've been in the hospital." The trial court responded, "…what I'm saying is this. You're aware, and you are delaying these proceedings." The State pointed out to the trial court, "If you've been in the hospital, what better place to receive medication than anywhere else would be in the

hospital[.]" The State also pointed out that defendant had a fitness examination in 2009, and Doctor Guzman found that defendant was taking Prozac, but even if defendant had not taken Prozac, it would not impair his fitness for trial.

¶ 22    Defendant's case proceeded to a jury trial with defendant refusing to participate and being held in the lockup facility attached to the courtroom while the trial was in session. On the second day of the trial, defendant continued to refuse to exit the lockup facility. He stated, "I can't. I can't. I'm not fit to go to trial. I didn't have any medication. I haven't had any meds in 14 days. I'm not fit." He also stated that he had been in the hospital. The trial court asked him to explain, and defendant stated that he had been "in Cermak." The trial court found that defendant would attempt to delay the proceedings every time that he is informed that the case must proceed, and his claim that he had not received his medication constituted another attempt to delay the proceedings.

¶ 23                                              **Trial**

¶ 24    A.B. testified that between 10:00 and 11:00 p.m. on September 4, 2004, she was returning to the home that she shared with her boyfriend and his parents in Markham, Illinois. After attending a family birthday party in Chicago, she was walking home when a man approached her as she neared the expressway overpass at 159th Street and Kedzie Avenue. When this man grabbed her arm, she pulled away, hit him, and sprayed "dog spray" at him. He pulled her into a nearby wooded area. At trial, A.B. identified defendant as the offender.

¶ 25    A.B. testified that defendant grabbed her by her hair and forced her to perform oral sex on him. He told her not to scream and threatened to kill her if she continued to fight him. He placed an object that appeared be a knife against her neck as she was on her hands and knees. He then put his penis into her anus. He forced her to turn around, ripped off her underwear, and forced his penis into her vagina as he held that knife to her neck. At that point, she was able to see the

offender's face and clothing. He repeatedly threatened to kill her if she did not stop and fighting. She tried to fight him off with an "eyebrow archer" that she had in her pocket as well as a large piece of wood that she found on the ground. Defendant ejaculated into her vagina.

¶ 26    She further testified that defendant forced her to remain seated in the wooded area. Every time she tried to get up, he jumped up and threatened to kill her. She was finally able to escape when she told him that she would not tell anyone or call the police. Defendant asked her if she had any money. She handed defendant all the money that she had, and he threw a couple dollars back at her. After he left the area, she ran home. She arrived home at approximately 3:00 a.m. and woke up her boyfriend's parents, who then called the police.

¶ 27    Oak Forest Police Investigator Casey Gallagher testified that he met with A.B. and noticed that she was crying, emotionally distraught, her hair was disheveled, her white shirt and jean skirt was covered with dirt and grass. Her legs were also dirty and there was dried liquid on her legs. After she told him what happened to her, he called for an ambulance, and she was transported to Ingalls Hospital.

¶ 28    Doctor Mark Weissman, an emergency room physician at Ingalls Hospital, testified that he examined A.B. She told him that after she missed her bus, a man accosted her, and dragged her into a grassy, wooded area. He pinned her down by her wrists, sat on her stomach, brandished a knife, and punched her in the face and head. Doctor Weissman noticed swelling, tenderness and bruising on the left side of her forehead and left check. A.B. also informed him that the offender forced her to put his penis into her mouth, turned her over and anally penetrated her, and then vaginally penetrated her. He observed A.B.'s rectum and anus and saw three to four linear tears one centimeter in length, and grassy material on her buttocks. He observed a small amount of blood in the vaginal wall. He also observed an angulated scratch four centimeters in length in her middle

of her right thigh, along with a bloody vaginal discharge. He took swabs of her mouth, vagina and anus as part of a rape kit.

¶ 29   While A.B. was still at the hospital, Sergeant James Knapp interviewed her. Sergeant Knapp testified that he noticed that she was "very distraught" and had redness on her face. A.B. told him what happened to her. Sergeant Knapp drove her back to the scene of the attack, an area along 159th Street and near an expressway overpass.  The two of them canvassed the area, and A.B. identified a large grassy area, where the grass was matted down, as the scene of the attack. Sergeant Knapp found a broken watch, an eyelash curler, a brush, and another kind of cosmetic device nearby. A.B. identified all these objects as belonging to her. She also identified a large tree branch as an object that she attempted to grab to assist her in fighting off the offender.

¶ 30   Back at the police station, Sergeant Knapp put together a photo array including the photo of someone that he suspected may be the offender. A.B. did not identify anyone from this photo array. Defendant's photo was not in that photo array.

¶ 31   A.B. further testified that, later that evening, she and her boyfriend took a walk and stopped by a liquor store at 159th Street and Kedzie Avenue. A.B. recognized defendant, who was behind the cash register, as the person who sexually assaulted her. She immediately froze. After she identified defendant as the offender to her boyfriend, her boyfriend hit him. The police were called. A.B. and her boyfriend were transported to the police station while defendant was transported to the hospital. Defendant's clothing and property were taken and inventoried by hospital personnel. Sergeant Knapp noticed an earring in defendant's personal property and asked A.B. if she was wearing earrings when she was attacked. She told him that she had lost one of them. She subsequently identified this earring as the earring she lost during the attack. A.B. also identified the offender as

wearing red shorts during the attack, and defendant was wearing red shorts when he was at the hospital. Sergeant Knapp subsequently obtained a DNA sample from defendant.

¶ 32     Katherine Sullivan, a forensic scientist with the Illinois State Police, testified that she tested the rape kit collected at the hospital for the presence of semen. She found semen in the rectal swab and the vaginal swab but did not find semen on the oral swab. Natalie Morgan, a DNA analyst at Bode Cellmark Forensics, conducted DNA testing on the rectal swab. From the DNA sample, she separated it into non-sperm cell fraction and sperm fraction. She identified A.B. as the donor of the non-sperm cell fraction, and the sperm cell fraction contained a mixture of two individuals. When comparing the male profile to defendant's profile, she determined that defendant's buccal swab "could not be excluded as a possible contributor to the profile." She explained that defendant was a donor to that mixture and 99.9% of the population could be excluded as a contributor.

¶ 33     The jury found defendant guilty of three counts of aggravated criminal sexual assault with contact between defendant's penis and A.B.'s anus, between the defendant's penis and A.B.'s vagina, and defendant's penis and A.B.'s mouth. The jury also found defendant guilty of one count of aggravated kidnapping.

¶ 34                              **Post-trial Proceedings**

¶ 35     After the jury found defendant guilty, defendant asked the trial court to draft an order to require the jail to give him his medicine because he had not been given his medicine in 14 days. The case was continued for post-trial motions and sentencing. On June 4, 2015, the trial court granted leave for private counsels Michelle Gonzalez and John Paul Carroll to file appearances. Despite having private counsel to represent him, defendant subsequently filed a *pro se* motion for new trial. The trial court gave counsels an opportunity to review the *pro se* motion, counsel opted to not adopt it. Counsels subsequently filed a motion for a new trial.

¶ 36       On the next court date, defendant did not appear in court because he refused to get on the prison bus. On the following court date, the trial court denied defendant's post-trial motion filed his private counsels. The trial court continued the case for sentencing. On October 30, 2015, the trial court noted that defendant filed three *pro se* motions while represented by counsel. Defendant filed a *pro se* motion to reconsider the denial of his *pro se* motion for a new trial, along with a motion alleging that some of the trial transcripts had been altered, and a motion for the appointment of counsel other than the public defender "due to ineffectiveness" of his post-trial counsels for failing to communicate, investigate and raise other constitutional violations in his motion for a new trial. The trial court asked defendant if, by filing this motion, he was seeking for his private counsels to withdraw, and defendant responded that he wanted them to withdraw unless they adopted his previously filed *pro se* post-trial motion for a new trial. Defendant then stated that he wanted to waive his right to counsel and proceed *pro se*, and private counsels filed a written motion to withdraw. The trial court granted private counsels' motion to withdraw, and defendant represented himself *pro se*.

¶ 37       On January 8, 2016, the trial court held a hearing on defendant's three pending motions. At the beginning of the hearing, defendant reminded the trial court that he had filed a "motion against the lawyer for ineffectiveness." The trial court proceeded to address the claims in each of the three, pending *pro se* motions. During the hearing, defendant requested another continuance because "I am sick. I have been throwing up. I have passed out. So I suffer from cancer from the stomach…It came back diagnosed about four months ago…" The trial court denied defendant's request and found that this was another attempt by defendant to delay the proceedings.

¶ 38        As the hearing continued, the trial court reminded defendant that he filed his original *pro se* post-trial motion for a new trial when he was represented by private counsels. Defendant pointed

out to the trial court that "you asked me were [private counsels] going to adopt anything from my motion. They said ten percent." The trial court responded, "I don't know about ten percent. He filed a new motion July 30, 2015. I gave an extension of time to file that." Defendant then asked the trial court for a transcript of that proceeding because he contended that he never fired his attorney. The trial court denied defendant's motion to reconsider the denial of his motion for a new trial. Specifically, the trial court found that "defendant was not denied any due process…there is no basis for this Court to grant any new trial in these proceedings" and defendant had the opportunity to raise these issues when he was represented by private counsels in posttrial proceedings who filed a motion on his behalf.

¶ 39     After the trial court found that there was no merit to defendant's motion for reconsideration of his motion for a new trial, the trial court then addressed defendant's request for appointment of counsel other than the Cook County Public Defender's Office. After the trial court stated that it would deny defendant's motion, defendant stated, "The one reason I filed that motion [to reconsider the denial of his motion for a new trial] is because the lawyer was ineffective. I want you to inquire to the motion [sic] and see the ineffectiveness of the lawyer." Defendant further argued that "I also have request for lawyer. You are obligated to – in your discretion to inquire to the motion to see whether or not he was ineffective." In response, the trial court stated:

"You asked that I appoint a lawyer other than the Public Defender's office.
Again, you hired private counsel. And then you fired private counsel. You have
fired the Public Defender's office.

You are indicating to them you don't want certain attorneys in the Public
Defender's office which I have informed you already you can't do. The Public

Defender's office appoints an attorney to represent you which is why you hired your own private attorney.

So the Court is not going to appoint an attorney other than the Public Defender's Office to represent you. Private counsel will not be appointed by the Court to represent you in these proceedings."

¶ 40     After ruling on defendant's pending motions, the trial court sentenced him to three consecutive terms of 20 years' imprisonment for the three counts of aggravated criminal sexual assault and a consecutive 10-year term of imprisonment for the one count of aggravated kidnapping.

¶ 41                                                    ANALYSIS

¶ 42                                      I. **Right to Counsel of Choice**

¶ 43     We first address defendant's contention that his sixth amendment right to counsel was violated when the trial court denied private counsel leave to file an appearance on the day the case was set to proceed to a jury trial. In response, the State argues that the trial court exercised appropriate discretion when it denied defendant's request to substitute counsel on the day of trial, after the case had been pending for ten years, because it constituted a delay tactic.

¶ 44     A defendant is entitled to the assistance of counsel. U.S. Const., amend. VI; see also Ill. Const. 1970, art. 1, § 8. This right includes the right to retained counsel of his or her choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-148 (2006); *People v. Baez*, 241 Ill.2d 44, 104-105 (2011). The denial of a defendant's right to counsel of choice, on its own, raises concerns about the integrity of the judicial process. *People v. Howard*, 376 Ill.App.3d 322, 338 (1st Dist. 2008). Thus, the violation of a defendant's right to counsel is a structural error. *Baez*, 241 Ill.2d at 105.

¶ 45     Defendant's right to retained counsel of his or her choosing, however, is balanced against the trial court's interest in trying the case with diligence and the orderly process of judicial

administration. *People v. Tucker*, 382 Ill.App.3d 916, 919 (1st Dist. 2008). A defendant who abuses the sixth amendment to delay trial may forfeit the right to counsel of choice. *Tucker*, 382 Ill.App.3d at 920. Additionally, "a trial court is granted 'wide latitude in balancing the right to counsel of choice against the needs of fairness [citation] and against the demands of its calendar.'" *Baez*, 241 Ill.2d at 106 (quoting *Gonzalez-Lopez*, 548 U.S. at 152). "In balancing the judicial interest of trying the case, the court must inquire into the actual request to determine whether it is being used merely as a delaying tactic." *Id*. (quoting *People v. Burrell*, 228 Ill.App.3d 133, 142 (1st Dist. 1992)). The relevant factors include:

> "(i) defendant's articulation of an acceptable reason for desiring new counsel; (ii) defendant's continuous custody, (iii) defendant's efforts in obtaining counsel, (iv) defendant's cooperation with current counsel, and (v) the length of time current counsel represented defendant." *People v. Adams*, 2016 IL App (1st) 141135, ¶ 13, citing *Tucker*, 382 Ill.App.3d at 920.

¶ 46    We review a trial court's decision on a motion to substitute for an abuse of discretion. *Adams*, 2016 IL App (1st) 141135, ¶ 14. "It is within the trial court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration." *Tucker*, 382 Ill.App.3d at 920 (citing *Burrell*, 228 Ill.App.3d at 142). An abuse of discretion will only be found where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill.2d 1, 20 (2000). Our determination turns on the facts of each case. *Hall,* 195 Ill.2d at 20. The trial court "does not abuse its discretion in denying a motion if new counsel is not specifically identified or does not 'stand ready, willing, and able' to make an appearance on defendant's behalf." *Id*. (quoting *Burrell*, 228 Ill.App.3d at 142). Nevertheless, even when new counsel is

unidentified, a trial court must inquire into whether the request is to obtain substitute counsel as a delaying tactic before it can properly deny that request. *Adams*, 2016 IL App.3d (1st) 141135, ¶ 15.

¶ 47 Defendant does not contend that the trial court failed to conduct an adequate inquiry at the time that counsel attempted to file an appearance on the day of trial. Instead, defendant focuses on the trial court's ultimate decision to deny counsel the opportunity to file an appearance on the day of trial. The State does not contest that the defendant made a clear and unequivocal request for assistance of counsel when the jury trial was scheduled to begin. On the other hand, defendant does not deny that had his request been granted, his jury trial could not have proceeded and his jury trial would have been further delayed.

¶ 48 We find that the trial court did not abuse its discretion in disallowing defendant the counsel of his choice. First, the trial court specifically found that defendant's attempt to substitute counsel was a delay tactic. Defendant offers little challenge to the reasonableness of the trial court's determination of the manipulative nature of defendant's request. As previously outlined, there is ample support in the record for the trial court's conclusion that defendant engaged in a dilatory tactic.

¶ 49 Notably, this case had been pending for eleven years. Defendant was arraigned before the trial court on October 13, 2004, and defendant sought to have private counsel file an appearance on May 11, 2015, the day of defendant's jury trial. Previously, on 16 different occasions, the trial court found that defendant was attempting to thwart his prosecution by his delay tactics.

¶ 50 Moreover, the trial court provided defendant plenty of opportunity for him to secure private counsel. On numerous occasions, defendant sought continuances, which the trial court granted, after he expressed the desire to secure private counsel. As far back as March 8, 2006, the trial court

agreed to allow defendant, who was proceeding *pro se*, a two-week continuance for defendant to find a private attorney. At that time, the trial court warned defendant that, "You're not going to delay this trial." At one point, in 2012, he informed the trial court that he had hired an attorney. The trial court granted defendant a continuance for this counsel to appear, however, this counsel never appeared.

¶ 51 Also, defendant defiantly announced that he would not participate in a trial when the trial court attempted to set a date for a trial. In 2012, defendant announced, "Okay, you all pick your own trial, I am not going to participate in it." On April 8, 2015, the trial court informed defendant that the jury trial would commence on May 11, 2015. At that point, defendant informed the trial court that he could not go to trial because he had been denied due process.

¶ 52 Defendant's jury trial was set to commence on May 11, 2015, at which time the State answered ready for trial. Private counsel requested leave to file her appearance on behalf of defendant. When counsel indicated that she had not received any discovery and requested a continue to review discovery before setting the case for trial again, the court responded, "That will be denied. The case has been pending ten years. [Defendant] has had ample opportunity to hire counsel and to be prepared for trial."

¶ 53 This was not the first time that defendant's trial had been delayed on the day it was set for trial. When defendant was still represented by an assistant public defender, the jury was in the hallway when defendant notified his assistant public defender, for the first time, that he no longer agreed to a stipulation as to the DNA evidence after he had previously indicated consent to such an agreement.

¶ 54 In addition to the trial court's finding that defendant's request amounted to a delay tactic, the trial court did inquire as to how long a continuance would be needed. Moreover, the trial court also

considered that counsel's oral motion to file an appearance was made on the morning of trial despite the fact counsel and defendant had been in contact with each other for approximately two weeks prior to trial. The trial court also expressed concern that private counsel was not sure when she had been retained by defendant. Considering the totality of this evidence, the trial court did not abuse its discretion in refusing to allow private counsel to delay defendant's jury trial so that he could secure private counsel.

¶ 55    In support, the State relies upon *People v. Pratt*, 391 Ill.App.3d 45 (1st Dist. 2009), as a case in which we found that the trial court did not abuse its discretion in denying the defendant's request, on the day of trial, to be represented by a private counsel after finding that the request amounted to a delay tactic. The defendant's case commenced in 2001, and the defendant had been represented by five different attorneys. In the beginning of 2006, defendant decided to proceed *pro se* after the trial court provided the necessary admonishments. The defendant acted as his own attorney over the next six months, filing various motions. In August of 2006, on the day that his jury trial was scheduled to commence, defendant sought a continuance and requested assistance of counsel because he contended "I can't handle" representing himself.

¶ 56    In holding that the record supported the trial court's conclusion that the defendant's request amounted to a dilatory tactic, we also recognized the supreme court's conclusion that the defendant's right to counsel "'may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime.'" *Pratt*, 391 Ill.App.3d at 56 (quoting *People v. Friedman*, 79 Ill.2d 341, 349 (1980)). In *Pratt*, while the defendant did not have counsel appear on the day of the scheduled trial, and, here, defendant did, we must also consider that defendant's case was pending for a much longer period of time, the

trial court repeatedly found that defendant had engaged in dilatory tactics, and defendant had previously announced that he would not participate in the trial.

¶ 57    Moreover, the record does not support defendant's claim that counsel was "ready, willing and able" to take defendant's case. However, as this court recognized in *People v. Curry*, 2013 IL App (4th) 120724, new counsel must stand "'ready, willing and able to make an unconditional entry of appearance instanter.'" *Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *People v. Koss*, 52 Ill.App.3d 605, 607-608 (1977)). *Curry* found that the trial court's inquiry revealed that new counsel made his appearance conditional upon the trial court granting two continuances. Here, as defendant concedes, counsel was unaware that defendant's case had been set for trial and requested two continuances. Where the trial court conducted an inquiry into the circumstances of defendant's request, and those circumstances demonstrated substitute counsel conditioned her appearance on her ability to secure two additional continuances, the facts do not support defendant's contention that new counsel stood "ready, willing and able to make an unconditional entry of appearance instanter.

¶ 58    Defendant, instead, relies on *Childress*, a case in which private counsel appeared before the trial court on the day the case was set for trial, asked to file an appearance on the defendant's behalf, and requested a continuance because he was unaware that trial was scheduled for that day. *People v. Childress*, 276 Ill.App.3d 402, 410 (1st Dist. 1995). However, we reversed and remanded, holding that the trial court deprived defendant of his counsel of choice where the case was less than a year old, defendant had previously never sought a continuance, and the trial court failed to ask how long a continuance would be needed. The facts in this case stand in sharp contrast. Defendant's case had been pending for over eleven years, defendant sought numerous continues,

and the trial court asked private counsel how long she would need for a continuance. Therefore, defendant's reliance on *Childress* is misplaced.

¶ 59   As a final matter, we reject defendant's argument that *People v. Mitchell*, 2016 IL App (2d) 140057, is factually similar and requires this case to be reversed and remanded. In *Mitchell*, the defendant moved for discharge of his counsel, a public defender, after his case had been pending for approximately nine months and two weeks before it was set for trial. The trial court granted the defendant's request, and the defendant was allowed to proceed *pro se*. Five days before the case was set for trial, the defendant filed a motion seeking appointment of a "bar association attorney" and appeared before the trial court. He stated that he was not ready for trial and needed counsel to represent him. After the trial court denied his motion for appointment of counsel, the defendant pled guilty. Thereafter, the defendant filed a *pro se* motion to withdraw his guilty plea in which he alleged that the trial court erred in accepting his plea without appointing counsel, which was denied.

¶ 60   Upon review, the court found that once a defendant competently waives his right to counsel, that waiver "carries forward to all subsequent proceedings unless [the] defendant later requests counsel or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings." *Id.* at ¶ 10. It further explained that, despite the defendant's misgivings about the public defender's ability to represent him, it did not follow that he would have chosen self-representation over reappointment of the public defender if those were his only alternatives." *Id.* at ¶ 12.

¶ 61   *Mitchell* is inapposite to the present case, where defendant rejected the court's offer to reappoint the public defender approximately seven times and previously informed the trial court that he "did not trust the public defender's office." Moreover, not only was the defendant's case

pending for a substantially shorter time period in *Mitchell*, but the trial court found that defendant's request amounted to a dilatory tactic. Thus, *Mitchell* is distinguishable and does not control here.

¶ 62 Thus, we find that the trial court did not abuse its discretion in disallowing defendant the counsel of his choice on the day of his scheduled trial as the record amply supports the trial court's conclusion that the request amounted to a dilatory tactic.

¶ 63 **II. Fitness**

¶ 64 Next, we review defendant's contention that the trial court erred when it failed to *sua sponte* order a fitness hearing when defendant indicated that he had not taken his medication right before the jury trial commenced. In support, defendant solely relies upon his announcement to the trial court, on the day that the jury trial was scheduled to commence, that he had not been receiving his prescribed medication, Prozac, at that time. The State contends that, looking at the totality of the evidence, there was no *bona fide* doubt to defendant's fitness requiring further inquiry.

¶ 65 We first address whether forfeiture precludes our review. Defendant acknowledges that he failed to preserve this issue at the trial level. Generally, a claim is forfeited by failure to raise an objection with the trial court. See *People v. McLaurin*, 235 Ill.2d 478, 485 (2009) ("to preserve a claim for review, counsel must object to the error at trial and raise the error in a motion for a new trial before the trial court") (citing *People v. Enoch*, 122 Ill.2d 176, 185-86 (1988)). The State agrees that this claim is reviewable under the second prong of plain error.

¶ 66 "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Fort*, 2017 IL 118966, ¶ 18. "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill.2d 539, 545 (2010). Under the first prong, a defendant

must show that "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Thompson*, 238 Ill.2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill.2d 551, 565 (2007)). Under the second prong, a defendant must show that "a clear or obvious error occurred and that the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Thompson*, 238 Ill.2d at 613.

¶ 67    As "fitness for trial *** involves a fundamental right" "courts have repeatedly determined that alleged errors concerning fitness may be reviewed under the plain error doctrine. [Citations]" *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 28. More specifically, our court has found that the second prong of the plain-error doctrine applies to claims regarding fitness determinations. See, e.g., *People v. Khan*, 2021 IL App (1st) 190051, ¶ 63 ("Since the right to be fit for trial is 'fundamental,' the question as to a defendant's fitness may be reviewed for plain error under the second prong."); *People v. Moore*, 408 Ill.App.3d 706, 710 (1st Dist. 2011) (because "[a] defendant's fitness for trial is a fundamental right, 'applying second prong plain-error review to claim that defendant's statements raised a *bona fide* doubt as to his fitness for trial). We thus proceed to review defendant's claim of error under the second prong of the plain error doctrine.

¶ 68    "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49; see also *Thompson*, 238 Ill. 2d at 613 ("The first step of plain-error review is determining whether any error occurred. [Citation.]"). Thus, we first assess whether the trial court's failure to *sua sponte* order a fitness hearing was a clear or obvious error. We find that there was no such error where

there were no facts in existence which raised a real, substantial, and legitimate doubt as to defendant's mental capacity to meaningfully participate in his defense.

¶ 69    "Due process bars the prosecution or sentencing of an unfit defendant. [Citations.]") *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 56. However, a defendant is presumed fit to stand trial (725 ILCS 5/104-10 (West 2000) and is entitled to a fitness hearing "only when a *bona fide* doubt of his fitness to stand trial or be sentence is raised." *People v. McCallister*, 193 Ill.2d 63, 110 (2000), citing *People v. Johnson*, 183 Ill.2d 176, 193 (1998); *People v. Eddmonds*, 143 Ill.2d 501, 512 (1991). A defendant is unfit "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2000). Defendant has the burden "of proving that, at the time of trial, there were facts in existence which raised a real, substantial and legitimate doubt as to his mental capacity to meaningfully participate in his defense and cooperate with counsel. The test is an objective one. *Eddmonds*, 143 Ill.2d at 518. "Because it is a violation of due process to convict a defendant who is mentally unfit to stand trial, a judge has a duty to order a fitness hearing *sua sponte* once facts are brought to the judge's attention that raise a *bona fide* doubt of the accused's fitness to stand trial or be sentenced." *McCallister*, 193 Ill.2d at 110-11 (citing *People v. Murphy*, 72 Ill.2d 421, 430 (1978)). "Whether a *bona fide* doubt as to a defendant's fitness has arisen is generally a matter within the discretion of the trial court." *People v. Sandham*, 174 Ill.2d 379, 382 (1996) (citing *People v. Murphy*, 72 Ill.2d 421, 431 (1978)). Accordingly, a trial court's failure to conduct a fitness hearing will amount to reversible error only where that decision, premised on the lack of a *bona fide* doubt of fitness, is arbitrary, fanciful, or unreasonable such that no reasonable person would take the view adopted by the court. See *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53.

¶ 70    Factors that may be considered in determining whether a *bona fide* doubt as to a defendant's fitness exists include, "a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill.2d 175, 186-87 (2010). Further, "[n]o fixed or immutable sign, however, invariably indicates the need for further inquiry on a defendant's fitness. [Citation]. Rather, the question is often a difficult one implicating a wide range of manifestations and subtle nuances." *Brown*, 236 Ill.2d at 187. Whether a *bona fide* doubt as to a defendant's fitness exists "depends on the facts of each case." *Murphy*, 72 Ill.2d at 435. It is the defendant, not the State, that bears the burden of proving there is a *bona fide* doubt as to fitness. *People v. Hanson*, 212 Ill.2d 212, 221-22 (2004).

¶ 71    Here, defendant does not point to anything, nor does the record reveal any indication that defendant became unable to understand the nature and purpose of the proceedings and assist in his defense. He responded in a coherent and appropriate manner to all the court's questions. He was able to present arguments regarding his pending *pro se* motions.

¶ 72    Moreover, the trial court presided over all phases of defendant's trial and was familiar with the history of the entire case as well as defendant's demeanor and ability to understand the nature and purpose of the proceedings throughout that extended period. At the times that defendant was represented by counsel, counsel never expressed any concern about defendant's fitness for trial. The trial court also knew that it had previously *sua sponte* ordered a fitness evaluation at a time when defendant was representing himself and after defendant informed the trial court that he was taking Prozac, Prozone, and Seroquel. The trial court did so, not because defendant had behaved in a manner that caused concern, but because defendant was taking these medications at a time

when he was proceeding *pro se*. The results of the three different psychiatrists showed that defendant was fit to stand trial and fit to stand trial with medication.

¶ 73    There is ample support for the trial court's finding that defendant's statement that he had not received his medication and was not fit to stand trial constituted a delay tactic. Defendant had repeatedly sought different avenues to delay the trial, and the trial court repeatedly recognized defendant's attempts to delay his trial. Moreover, defendant's announcement that he had not received his medication occurred only after the trial court denied his request for a continuance to secure private counsel on the day that the case was set for trial. At trial, defendant contended that he did not receive his psychotropic medication while he was hospitalized, yet did not produce any hospital records to support his claim.

¶ 74    Moreover, the record further supports the trial court's finding of a delay tactic where defendant kept changing the extent of time that he had not received his medication. He first announced that he had not received his medication for ten days, but then announced that he had not received his medication for 15 days. The next day, on May 12, 2015, defendant stated that he had not had his medication for 14 days. Then, on May 13, 2015, defendant informed the trial court that he had not received his medication for 14 days.

¶ 75    Not only did defendant change the extent to which he had not received his medication, but he also informed the trial court that it occurred when he was hospitalized. As the trial court recognized, we also find it difficult to believe that defendant would not receive his medication at a time when he was under the care of hospital staff.

¶ 76    We do not agree with defendant's claim that his announcement to the trial court that he was no longer receiving his prescribed medication was sufficient to raise a *bona fide* doubt of defendant's fitness to stand trial.  "[T]he administration of psychotropic medications is not conclusive of a

*bona fide* doubt as to defendant's fitness." *People v. Mitchell*, 189 Ill.2d 312, 331 (2000). Instead, "the relevant inquiry is whether he could understand the proceedings and cooperate with counsel in his defense at the time of trial." *People v. Easley*, 192 Ill.2d 307, 322 (2000). Moreover, to agree with defendant's claim would also require this court to consider defendant's claim in isolation instead of properly viewing this case based upon the totality of the evidence. When defendant reported to the trial court that he had not been receiving his medication, the trial court was able to assess this information considering defendant's repeated attempts to delay these proceeding. The trial court is not required to *sua sponte* order a fitness hearing when there is "no real, substantial and legitimate doubt" as to a defendant's mental capacity to meaningfully participate in his defense and cooperate with counsel. Here, considering the record, the trial court did not believe that defendant's claim was legitimate, and instead, was based upon a desire to further delay the proceedings. In view of the overwhelming evidence in the record that defendant had the mental capacity to meaningfully participate in his defense and the trial court's determination that defendant was simply trying to delay the proceedings, defendant's allegation that he had not received his prescribed medication did not automatically raise a *bona fide* doubt of defendant's competency to stand trial.

¶ 77    In finding that the trial court did not err in failing to *sua sponte* request a fitness hearing, we recognize the factual distinction that exists between the instant case and *People v. Moore*, 408 Ill.App.3d 706 (1st Dist. 2011). In *Moore*, prior to trial, the trial court conducted a fitness hearing at which time the psychiatrist testified that the defendant needed the prescribed medication to be fit for trial. The trial court concluded that the defendant was fit to stand trial with medication.

¶ 78    Prior to jury selection, defendant's attorney renewed the issue of the defendant's fitness to stand trial, arguing that there was no evidence that defendant was on any medication when the

crime occurred. The State asked the trial court to inquire whether the defendant had taken his medication. Upon questioning by the trial court, the defendant stated that he did not have his medication that morning, and two days before then. *Moore* found, "In order to be fit for trial, the defendant had to be on his medication. The fact that defendant had not been given his medication raised a *bona fide* doubt as to defendant's fitness." *Id.* at 712. *Moore* further found that there was also a *bona fide* doubt as to the defendant's fitness where "this chemically dependent defendant was made to suddenly and totally go off his medication just prior to selecting the jury…" *Id.*

¶ 79 For support, *Moore* relied upon *People v. Jackson*, 57 Ill.App.3d 809 (1st Dist. 1978). In *Jackson*, the defendant had an initial fitness hearing and was found unfit to stand trial. Six months later, at a second fitness hearing, the defendant was found to be fit to stand trial with medication. Prior to sentencing in *Jackson*, the trial court expressed concern regarding the defendant's fitness and ordered a fitness examination be conducted and submitted to the court at the sentencing hearing. Thereafter, at the sentencing hearing, the trial court was informed that no such examination had been conducted, and that the defendant had not been given the medication that was necessary to maintain his fitness. Notwithstanding, the court proceeded to sentencing. *Id*. at 814. In those circumstances, this court found the existence of *bona fide* doubt of defendant's fitness at sentencing.

¶ 80 We recognize that in *Moore* and *Jackson*, the trial courts were not faced with a defendant who had repeatedly attempted to delay the proceedings and provided a reason for the trial court to question the legitimacy of his claim that he had not received his prescribed medication. Moreover, in *Jackson*, the defendant was initially found to be unfit to stand trial, and, even after being found fit to stand trial with medication, the trial court expressed concern regarding the defendant's fitness and ordered a fitness examination be conducted but decided to proceed with sentencing even after

finding out that the examination had not been conducted. Here, the trial court never found defendant to be unfit to stand trial, never expressed any concern about defendant's fitness to stand trial, and years before trial, only ordered a fitness hearing out of an abundance of caution upon finding out that defendant was prescribed psychotropic medication. Moreover, here, the trial court did not choose to proceed to trial knowing that it had ordered a fitness hearing, but no such hearing had been conducted.

¶ 81        Based upon the record in this case, we conclude that the trial court did not abuse its discretion in failing to *sua sponte* request an evaluation of defendant's fitness to stand trial. There were no facts in existence which raised a real, substantial, and legitimate doubt as to defendant's mental capacity to meaningfully participate in his defense. Consequently, there was no plain and obvious error to satisfy the requirements under the plain-error doctrine.

¶ 82                              **III.  *Krankel* Inquiry**

¶ 83        Defendant contends that this court should remand for a hearing pursuant to *People v. Krankel*, 102 Ill.2d 181 (1984), after the trial court failed to conduct a preliminary inquiry into his claim of ineffective assistance of post-trial counsels. The State, however, contends that the trial court conducted an adequate inquiry into defendant's claim of ineffective assistance of post-trial counsels after it discussed the issue with defendant and relied upon its own knowledge of the trial record relating to defendant's claim.

¶ 84        The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question for which the standard of review is *de novo*. *People v. Roddis*, 2020 IL 124352, ¶ 33 (citing *People v Jolly*, 2014 IL 117142, ¶ 28). A *pro se* post-trial motion alleging ineffective assistance of counsel is governed by the common-law procedure developed by *People v. Krankel*, 102 Ill.2d 181 (1984), and encourages the trial court to fully address these claims and thereby

narrow the issues to be addressed on appeal. *Roddis*, 2020 IL 124352, ¶ 34 (citing *People v. Jocko*, 239 Ill.2d 87, 91 (2010)). When a defendant makes a claim alleging ineffective assistance of counsel either through written motion or bringing the claim to the trial court's attention by other means, defendants are not automatically entitled to appointed counsel in every case. *Id*. at ¶ 35. The trial court should first examine the factual basis of the defendant's claims and should only appoint new counsel if the allegations show possible neglect of the case. *Id*. (citing *People v. Moore*, 207 Ill.2d at 77-78). If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court is not required to appoint new counsel and may deny the *pro se* motion. *Id*. at 78. The appointment of new counsel allows for that counsel to "independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to defendant's position." *Id*. at 78 (citing *People v. Chapman*, 194 Ill.2d 186, 230 (2000)).

¶ 85    In determining whether defendant's claim merits further action, the trial court can inquire into allegations of a defense counsel's ineffectiveness by "(1) questioning the trial counsel, (2) questioning the defendant, and (3) relying on its own knowledge of the defense counsel's performance in the trial." *Moore*, 207 Ill.2d at 78-79.

¶ 86    We recognize that, at the time that defendant raised his *pro se* claim of ineffective assistance of post-trial counsel, he also filed several different *pro se* motions, and the trial court sought to rule on each of these motions at the same hearing. Defendant filed a *pro se* motion to reconsider the denial of his *pro se* motion for a new trial, along with a motion alleging that some of the trial transcripts had been altered, and a motion for the appointment of counsel other than the public defender "due to ineffectiveness" of his post-trial counsels for failing to communicate, investigate and raise other constitutional violations in his motion for a new trial. In particular, defendant's

motion for appointment of counsel other than the public defender not only requested private counsel to represent him for sentencing, but also sought the trial court to review his post-trial counsels' representation of him in filing the written motion for a new trial.

¶ 87    Notably, defendant's claims of ineffectiveness of post-trial counsel were based upon counsel's decision-making when preparing the motion for a new trial. In that motion, defendant sought for the trial court to consider additional grounds for finding that his motion for a new trial should have been granted. As a result, when the trial court addressed defendant's arguments relating to the reconsideration of his motion for a new trial, the trial court also considered defendant's claim of ineffectiveness of post-trial counsel in the preparation of the motion for a new trial filed by post-trial counsel. The trial court conducted this preliminary review and determined that defendant's claims lacked merit. The trial court stated, "…defendant was not denied any due process. He is not entitled to a new trial. There is no basis to grant the defendant a new trial. The defendant has had the opportunity with his attorney who represented him in posttrial proceedings who filed a motion on his behalf…The Court finds the amended motion to reconsider the filing or in the alternative motion for new trial, there is no basis for this Court to grant any new trial in these proceedings."

¶ 88    After the trial court completed its review of defendant's motion to reconsider the denial of his motion for a new trial, the trial court also considered defendant's additional request for private counsel to represent him in these proceedings.  Here, defendant seeks for this court to limit its review of the record, in determining whether the trial court conducted a preliminary review, to the comments that the trial court made at that time. However, we recognize that, where the basis of defendant's claim of ineffectiveness was directly related to his additional request to review the trial court's ruling on the motion for a new trial, filed by private counsels, the record clearly shows

that the trial court conducted a proper preliminary review of defendant's claims of ineffective assistance of post-trial counsel.

¶ 89   Defendant also contends that there is evidence in the record to show that his post-trial counsel "possibly neglected his case" where the trial court and the State "expressed confusion as to how counsel could prepare a motion for a new trial without reviewing the transcripts of the trial." The State contends this argument is without merit because these types of decisions constitute trial strategy and are within the purview of post-trial counsel.

¶ 90   We find, however, that the relevant inquiry in this case is whether the trial court conducted a proper preliminary review of defendant's claims. "The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim. In this way, the circuit court will have the necessary information to determine whether new counsel should be appointed to argue the claim of ineffective assistance of counsel." *People v. Ayers*, 2017 IL 120071, ¶ 24.

¶ 91   To the extent that defendant is asking this court to consider this colloquy as evidence regarding the merits of his underlying claim of ineffective assistance of trial counsel, "determining whether the defendant actually received ineffective assistance of counsel is for another day; the court does not reach the merits of such claims at the *Krankel* hearing." *People v. Roddis*, 2018 IL App (4th) 170605, ¶ 48. As to the relevant issue at hand, whether the trial court abused its discretion in failing to conduct a proper *Krankel* inquiry, notably, defendant never relied upon this fact at the trial level when asking for trial counsel to be appointed to represent him. However, the trial court was obviously aware of this colloquy at that time that it considered defendant's claims. *People v. Moore*, 207 Ill.2d 68, 79 (2003) (in conducting its preliminary inquiry, the trial court may base its evaluation of a defendant's *pro se* claims on its knowledge of defense counsel's performance at

trial). Ultimately, we find that this evidence is not so persuasive as to show that the trial court abused its discretion in its examination of the factual basis of defendant's claims and its determination that new counsel should not be appointed.

¶ 92    Based upon our review of the record, we find that the trial court did not abuse its discretion. The trial court conducted an adequate preliminary inquiry into defendant's claim of ineffective assistance of post-trial counsels, finding them to be without merit, so remand in not necessary for further inquiry into defendant's claims. the trial court conducted an adequate inquiry into defendant's claim of ineffective assistance of post-trial counsels

¶ 93                                              CONCLUSION

¶ 94    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 95  Affirmed.